### CORA BOOKOUT, ADMRX. *v.* HARVEY SHANNON.

1. BOOKS OF ACCOUNT. *Competency as evidence.*
   A physician who sues his patient's administrator, being incompetent to testify as to the debt, may introduce his books, which are the best evidence that he can produce, although not the best evidence of which the case admits.

2. SAME. *Preliminary proof.*
   In such a case the books of original entries, if apparently fair and unobjectionable, are admissible in evidence without preliminary proof that the physician ever attended the intestate in his lifetime.

3. SAME. *Suppletory evidence.*
   The books alone are not sufficient to prove their competency, but the oath of the physician who made the entries may be given as suppletory proof to the court on this question.

4. SAME. *Estate of deceased person.*
   Admissibility of the books is not destroyed by the fact that the person who made the entries is incompetent as a witness to establish his own claim against a deceased person's estate.

5. SAME.  *Hieroglyphics and key.*
   If the entries in the books are hieroglyphics, the key with which to deci-
       pher them may be put in evidence, after the books are adjudged com-
       petent and are introduced.

6. SAME.  *Provinces of judge and jury.*
   The judge decides upon the competency of the books, the jury upon their
       sufficiency, and the facts that it is not shown that they were correctly
       and properly kept, and that the entries do not correspond with the
       account sued on, relate alone to the latter consideration.

7. SAME.  *Discussion of doctrine.*
   The doctrine of the competency of books of account as evidence in vari-
       ous cases discussed, the authorities reviewed and the reason and scope
       of the rules illustrated.

APPEAL from the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

With his declaration in assumpsit the appellee filed the fol-
lowing account: —

" EST. BEN. C. BOOKOUT,
1878                                TO HARVEY SHANNON, M.D."

| | |
|---|---|
| February 25, 27, 28, 6 visits, at $3.00 . . . . . . . . . . . | $18.00 |
| March 3, 4, 5, 6, 7, 8, 25, 26, 27, 29, 14 visits, at $3.00 . . . . | 42.00 |
| August 5, 6, 7, 8, 12, 13, 9 visits, $3.00 . . . . . . . . . | 27.00 |
| | $87.00 |
| Affidavit and clerk's fee . . . . . . . . . . . . . . . | 1.00 |
| | $88.00 |

At the trial he introduced, over the defendant's objection, a
book alphabetically paged, with " 1878 — Dr. H. Shannon,"
written on the fly-leaf, and the following entries on one page
under the letter " B," and like entries on other pages under
the several letters of the alphabet, thus: —

                        Jan. 7, March 19, June 12, Aug. 5  6    7    8
Babb, Mrs. A. F.          /         /         /         /  N  ×  ×
                                                           Settled by her note.

                        Jan. 10 11 12.
Bellenger, Mrs. Jacob.    /  /  /
                                Probated and in hand of W. J. Katz.

                        Feb. 10 11 12 14 15 16 17 18 19 21 22
Bradley, Wash. C.          /  N  /  /  /  /  /  /  /  /  /

Bookout Ben. C.

Feb. 26 27 28; M'ch 3 4 5 6 7 8 25 26 27 29

✳ / ✕      / / / / / / ✕ ✕ ✕ /

Aug. 5 6 7 8 12 13

✕ ✕ / / / ✕

$87.    Probated account.

May 7 8 ch.

Bookout Geo.      / /

Probated.    Paid.

He also introduced, over the appellant's objection a small book with the following printed title-page: —

" The
PHYSICIAN'S
VISITING LIST
for 1881.
Thirtieth Year of its Publication.
Philadelphia.
Lindsay & Blakiston.
Sold by all Booksellers and Druggists."

The fourth page of this book contained the following : —

"TABLE OF SIGNS:"

" The following table explains itself: Thus, each patient having a line, and each day its column, the marks in the margin, as below, are intended to be made in the column under the proper date, and immediately on a line with the patient's name. For instance, for a visit to be made a dot thus .; when made the dot will be crossed, / ; for a second visit, ./ ; when made the dot is again crossed, ✕ ; and so on.

| | |
|---|---|
| . Visit to be made. | C Consultation. |
| / Visit made. | ∅ Consultation held. |
| ./ Second visit to be made. | ∠ Visit made and medicine sent. |
| ✕ Second visit made. | N Night visit. |
| 10 Visit to be made at a certain hour A.M. | V Vaccination. |
| | O Obstetric case. |
| 5. Visit to be made at a certain hour P.M. | CC Office consultation." |

Upon this evidence alone, over the appellant's plea of non-assumpsit, the plaintiff obtained judgment.

*Miller & Hirsh*, for the appellant.

Books of account are merely secondary evidence, admissible only when direct proof of the claim cannot be made by the

oath of the creditor or other witnesses. This is the ground of the decisions in the cases of *Moody* v. *Roberts*, 41 Miss. 74, and *Hunter* v. *Wilkinson*, 44 Miss. 721. It cannot be judicially known that no other evidence exists; but this must be proved. No presumption can be made, in the absence of testimony, that these are original entries made at the times of the transactions. There is nothing to show that the book was correctly and properly kept, or that the appellee ever attended the intestate, or that his services were worth what he charges. No charge appears in the book against the appellant's intestate, but merely his name followed by certain dates and marks straight and crossed. These, even with the aid of the key, do not correspond with the account filed with the declaration. If doctors can prove accounts against the estates of their deceased patients in this manner, they have greatly the advantage of ordinary mortals. They not only escape the disagreeable position of facing their adversaries, but also avoid answering embarrassing questions on cross-examination.

*Birchett & Gilland*, for the appellee.

" The Physician's Visiting List," with its table and explanation of signs, was the best evidence on the subject. An expert could only have testified from knowledge derived from this book. Scientific works are competent evidence to explain technical and scientific terms and phrases, and to prove facts. *Bowman* v. *Woods*, 1 G. Greene, 441; *Stoudenmeier* v. *Williamson*, 29 Ala. 558; *Green* v. *Cornwell*, 1 C. H. Rec. (N. Y.) 11; *Jackson* v. *Cody*, 9 Cowen, 140. The key and account-book together give all the information necessary. Under ordinary circumstances they were admissible, but especially so when Shannon was rendered incompetent by Bookout's death. Evidence that the appellee made visits would not have added to the weight of the case. *Simmons* v. *Means*, 8 S. & M. 397. These books are regularly kept and bear inspection. They meet all the requirements announced in the leading cases of *Moody* v. *Roberts*, 41 Miss. 74, and *Hunter* v. *Wilkinson*, 44 Miss. 721. The entries are charges against Bookout. *Churchman* v. *Smith*, 6 Whart. 146. An error goes to the sufficiency of the evidence, not its competency. If the appellee prefers this system, it does not affect the question that it differs from

the ordinary method of book-keeping. Letters, numbers, abbreviations and words are but signs, some of them better known to the public than those here used, and some more unintelligible without explanation than any employed in this system.

COOPER, J., delivered the opinion of the court.

The single question presented in this case is as to the competency of the books offered in evidence by the plaintiff. The suit is upon a note, and also upon an account for professional services, rendered by the plaintiff, a physician to the appellant's intestate. For the purpose of proving the account, the plaintiff offered in evidence an account-book, in which appeared the names of various persons, arranged in alphabetical order, and opposite each name various dates. Beneath each date appeared a hieroglyphic. Among the names appeared that of appellant's intestate, and opposite to it the following entries.

```
Feb. 26  27  28;  M'ch  3  4  5  6  7  8  25  26  27  29
       ✳  /  ×          /  /  /  /  /  /  ×  ×  ×  /
Aug. 5  6  7  8  12  13
      ×  ×  /  /  /  ×        $87.  Probated account.
```

On the fly-leaf of this book was written, "1878 —— Dr. H. Shannon." No suppletory evidence was offered with the book, and to its introduction as evidence the defendant objected. First, because the book was not shown to be the best evidence, and because it was not shown that the plaintiff ever attended the intestate or his family. Second, because it was not shown that the book was correctly and properly kept. Third, because the book was not identified, or shown to be the book of accounts kept by the plaintiff in his business beyond what the book itself showed. Fourth, because the book was only the plaintiff's own testimony. And fifth, because the entries in the book did not correspond with the account sued on.

The first ground of objection is not tenable. The suit is brought to recover for personal services rendered by the plaintiff to the defendant's intestate; and by law the plaintiff was prohibited from testifying as a witness to establish the correctness of the account, or that it was due from the intestate at his death. The rule requiring the production of the best evidence

is not applicable, where the evidence offered is the best that can be produced by the party. Starkie on Evid. 644. Evidence of the fact that the plaintiff had attended the intestate would not have alone authorized a verdict for the plaintiff, but it was necessary to prove that the particular services sued for were rendered, and of this fact the books offered were evidence, if competent.

The rule governing the production of the character of evidence here offered was laid down by the court in the case of *Moody* v. *Roberts*, 41 Miss. 74, to be " when direct proof of a claim for goods sold, or for services rendered, cannot be made by the oath of the party, or of other witnesses, the books of account of the party are admissible, not as conclusive evidence of the claim, but as testimony tending to establish it, the credit of which is to be weighed by the jury. The competency of the books as evidence in the particular case is a question for the court, and, in order to justify their reception, it must appear that they are the regular books of account of the party, containing the original entry of his transactions from day to day, in the regular course of his business, and made at or near the time of the transactions to be proved, and that they are fairly and honestly kept. The entries must purport to have been made with a view to charge the opposite party, and alterations and additions in the account sued on, apparent on their face, must be satisfactorily accounted for. No mode is prescribed by law in which a book must be kept to make it evidence, and the question of competency must be determined by the appearance and character of the book, regard being had to the degree of education of the party, the nature of his employment, the manner of his charges against other people, and all the circumstances of the case." In declaring that the question of the competency must be determined by the appearance and character of the book, we do not understand that the book alone, unsupported by any oath of the party or other evidence, is sufficient proof of its own competency, however orderly may be the appearance of its entries. What is there meant is that the court will look to the book to see if it purports to contain entries of charges against the party, such as it is, if competent, evidence to prove; that it is on its face a book of accounts,

and not a collection of loose and indeterminate memoranda; that there are or are not alterations or additions requiring explanation by the party offering it in evidence; and for the purpose of satisfying itself as to those facts of which the book itself is evidence.

But it is apparent that the books cannot be received as sufficient alone to prove their own competency; for, if such was the rule, the door for fraud would be thrown so invitingly open, that the resulting evils would greatly overbalance those which the rule permitting them to be introduced was established to avoid. The sufficiency of the preliminary and suppletory evidence ought to be tested in a large degree by the circumstances which surround each case, and, while it would be difficult to formulate a rule by which it ought to be tried, it may be said that when the party introduces evidence satisfactory to the presiding judge, showing that the books are the books of account containing entries contemporaneous with the transactions under investigation, and the books themselves are unobjectionable and apparently fair, they may be admitted as evidence of the account.

The second and fifth objections are for matters which go to the weight of the evidence and not to its competency. The fourth objection is not tenable. The books are not the testimony of the party in the sense that they are inadmissible under our statute prohibiting a party from giving testimony against the estate of a deceased person. The admissibility of this character of evidence is not affected by the fact that the party making the entries is himself disqualified from giving testimony as a witness. Indeed the books are admitted only because of a lack of better or more satisfactory evidence on account of the death, or incompetency of the party who made them, or his inability to remember the facts. When the party making the entries is incompetent as a witness, the books themselves are the evidence, and his oath may be given as supplementary proof to the court on the question of their competency; but when the party is a witness, then they may be used as a means of refreshing his memory, and only become evidence themselves in those cases in which, having examined the entries for the purpose of refreshing his memory, he is still

unable to remember the facts. Starkie on Evid. 679; *Nichols v. Haynes*, 78 Penn. St. 174.

The plaintiff, in explanation of the entries in the book of accounts, offered in evidence what appears from the bill of exceptions to have been a key to the hieroglyphics in which the account was kept. Conceding the competency of the account-book, we see no error in permitting the introduction of the key to the system. If a witness had been introduced to explain the entries on the book, it is apparent that he could only have given in substance what was fully and more satisfactorily explained by the book itself. It was in fact a disconnected part of the book of accounts, necessary to an explanation of it, and containing the best evidence of the facts it was introduced to prove.

The judgment, because of the error committed in admitting without suppletory proof the book of accounts, is reversed and a new trial awarded.

*Judgment accordingly.*