# Hough v. Smith, Ex'r, Etc.

*Bill in Equity to Reform Deed for Mistake.*

[Decided Feb. 13th, 1902.]

1. *Reformation for mistake, when granted; burden of proof.* Courts of equity do not grant reformation upon a probability, or even upon a mere preponderance of the evidence, but only upon a certainty of error, and the burden is always on the complainant in such cases to show the mistake by evidence that is clear, exact, convincing and satisfactory.

2. *Same; when not granted.*—Where a bill is filed by an executor to reform for mistake a deed made to his deceased testator and testator's wife, the mistake alleged being in the insertion of the wife's name as a grantee, and the draughtsman of the deed testified that the wife's name was inserted by him without any authority or direction from the husband, and the deed was delivered to the husband for examination and kept by him for a day before its execution; and the deed was to effectuate a division of lands between said husband and the grantors therein, who were joint owners with him; and from the date of the execution of the deed to the date of the husband's death, a period of seven years, he never mentioned that any mistake was made in the deed, but exercised dominion and control in the cultivation and renting of the lands; and defendant's evidence shows that the wife claimed an undivided interest in the land which was recognized by the husband,—the evidence is not sufficiently clear, exact, convincing and satisfactory to justify a reformation of the deed.

[Hough v. Smith, Ex'r. Etc.]

APPEAL from Bullock Chancery Court.

Heard before Hon. W. L. PARKS.

JINKS & BLUE, for appellant, cited *Hertzler v. Stevens,* 119 Ala. 333; *Smith v. Allen,* 14 So. Rep. 760; *Campbell v. Hatchett,* 55 Ala. 548; *Turner v. Kelley,* 70 Ala. 85; *Guilmartin v. Urquhart,* 82 Ala. 570; *Hess v. Cheng,* 83 Ala. 251; *Hodges v. Denny,* 86 Ala. 226; *Robertson v. Walker,* 51 Ala. 484; 1 Brick. Dig. 685, § 664, 672.

NORMAN & BALDWIN, *contra.*

DOWDELL, J.—The bill in this case was filed by appellee S. W. Smith, as executor of the last will and testament of W. C. Smith, deceased. The equity of the bill is predicated upon the allegation of mistake in the execution of a deed by the heirs at law of Eliza Pipkin, deceased, to the said W. C. Smith, deceased, and Jeannette Smith, his wife. This allegation is based upon information and belief which the complainant avers that he believes to be true. The relief sought is the reformation of said deed. The alleged mistake in the execution of said deed, conveying the land described in the bill, consisted in the insertion of the name of Jeannette Smith, who was the wife of said W. C. Smith, as grantee in said conveyance.

The law, as applicable to such cases, is well settled in the case of *Hertzler, Jr. v. Stevens,* 119 Ala. 333, where authorities have been collated and cited by HARALSON, J. There, quoting from 2 Pomeroy Eq. Juris., section 859, it is said, with approval by this court: "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of error." Furthermore, it was there said: "The burden in such cases is always on the complainant to show by evidence that is clear, exact, convincing and satisfactory that the written contract does not express the true agreement between the parties;" citing *Moore v. The State,* 115 Ala. 582. And again: "If the proof is uncertain in any material respect, it will be held insufficient; and while the courts may feel a great wrong has been done,

they can grant no relief by reason of uncertainty."
*Alexander v. Caldwell*, 55 Ala. 522; *Berry v. Sowell*,
72 Ala. 17.

The allegation of mistake as alleged in the bill is
positively denied in the answer of the respondent. The
testimony is in conflict; the evidence on the part of the
complainant tending to show that there was such mis-
take as alleged, while that on the part of the defendant
positively denies that any mistake was made in the exe-
cution of said conveyance, but that the same was exe-
cuted in accordance with the wishes of complainant's
testator. The proof shows that the deed in question
was executed in pursuance of a division of a tract of
land which was jointly owned by W. C. Smith, com-
plainant's testator, and one Eliza Pipkin, the ancestor
of the Pipkin heirs, the said division having been ef-
fected between the said W. C. Smith and the said Eliza
Pipkin, during her lifetime, but at the time of said di-
vision no titles were executed by said joint owners to
and from each other to the respective parts of said
land allotted to each. The complainant's witness, M.
E. Pruett, testified that he was the draughtsman who
drew up and prepared the deed in question, which was
executed by the Pipkin heirs, and that he, without any
authority or direction from W. C. Smith, inserted the
name of Jeannette Smith as one of the grantees in said
deed. This deed was executed in 1891. This witness
further states upon cross-examination that when he
drew up said deed he gave the same to the said W. C.
Smith in the afternoon to look over and examine, and
that he kept it until the next morning, when it was re-
turned to witness, and it was subsequently signed up
by the Pipkin heirs and delivered to said W. C. Smith.
The testimony of other witnesses of complainant tend
mainly to show that W. C. Smith claimed the land,
controlled it, cultivated and rented it out, etc., and that
they never heard of Mrs. Jeannette Smith claiming to
have any interest in the same. As opposed to this, the
testimony of respondent's witnesses unmistakably shows
that Mrs. Jeannette Smith claimed an undivided half
interest in the land, and a recognition by W. C. Smith
of such claim. Taking in connection with this testi-

mony of the respondent's witnesses, the fact that at the time of the execution of the conveyance, and before the same was signed, the deed remained in the hands of W. C. Smith for examination by him for an entire day before its execution, and together with the further fact that from the day of its execution down to the date of his death in 1898, a period of nearly seven years, he never once mentioned to anyone, so far as the evidence discloses, that there was any mistake in the insertion in the deed of the name of his wife, Jeannette Smith, as a co-grantee with himself, the evidence, if not convincing, is strongly persuasive that there was no mistake in the insertion of the name of Jeannette Smith in said deed of conveyance, but that it was done in accordance with the wish and intention of the said W. C. Smith. It is shown by the evidence that W. C. Smith, and Jeannette Smith, his wife, were without children, and it was a most natural thing that the husband should desire that the companion of his life, and one who had shared with him the toil of many years in the accumulation of property, should share in its ownership, and that the same should be evidenced by writing. The fact that he exercised dominion and control in the cultivation and in the renting of said lands is not at all inconsistent with the fact of the joint-ownership of his wife. To say the least of it, the evidence in this case does not come up to the measure laid down in the authorities cited that would authorize the interference of a court of equity for the purpose of reforming the contract.

It results from the foregoing conclusions that the decree of the chancellor must be reversed, and a decree will be here rendered dismissing complainant's bill.