[Warten, et al. v. Black.]

# Warten, *et al. v.* Black.

### Detinue.

(Decided June 30, 1915. Rehearing denied January 20, 1916.
70 South. 758.)

1. **Witnesses; Competency; Transaction with Decedent.**—While the comon law disqualifications of a witness are preserved by the provisions of 4007, Code 1907, a defendant may, in an action by the executors of a decent to foreclose a mortgage by the recovery of chattels in specie conveyed ereby, testify as to the number of cattle he had pastured for the decedent various times; such being testimony as to a collateral fact and not a ansaction with decedent, the word "transaction" not including collateral cts.

2. **Same; Refreshing Recollection; Documents.**—Where a defendant ows and can vouch for the truth of an account book showing the number cattle which at various times he had pastured for the decedent, such book ay be used to refresh the recollection, although itself not admissible in idence.

3. **Witnesses; Competency.**—Where it was claimed that a horse belonged deceased instead of to the defendant, the defendant may testify that a eck which was offered in evidence, and which was given him by the deased with which to pay for the horse did not bear the notation reciting at it was given in payment of the horse, when he received it from the deased.

4. **Evidence; Res Gestae.**—Where it was claimed that a horse in the possion of defendant belonged to the estate of deceased, the seller of the anial may testify that when he sold it, he told defendant that he would not ll it to deceased; such fact being part of the res gestae.

5. **Charge of Court; Applicability to Evidence.**—Where defendant introced evidence tending to show that he had instructed the deceased to apply certain payment on the debt secured by the chattel mortgage instead of e unsecured debt, evidence by the bookkeeper of deceased that deceased, in e presence of defendant, instructed the bookkeeper to apply the payment defendant's account, did not warrant an inference that defendant acquied in the application of the payment to the unsecured account; hence, arges that defendant had the right to direct the application of payment, d that deceased was bound to apply the payment as directed were not jectionable for a failure to set out the qualifications as to waiver or quiescence.

(McClellan, J., dissents.)

APPEAL from Limestone Circuit Court.
Heard before Hon. D. W. SPEAKE.
Detinue by Henry Warten against Owen Black. Plaintiff ving died, the action was revived by Leo M. Warten and oth-

[Warten, et al. v. Black.]

ers as executors. Judgment for defendant, and plaintiffs appeal
Affirmed.

The facts sufficiently appear from the opinion. The follow
ing charges were given for defendant: (1) I charge you, gen
tlemen of the jury, that where a debtor owes to a creditor
secured debt and an unsecured debt, he has the right under th
law to direct the application of payment made by him, or credi
to which he is entitled, to the reduction of or satisfaction of th
secured debt; and where such direction is so given by the debtor
I charge you that the creditor has no right to apply payment o
credit otherwise than as directed.

(4) If you believe from the evidence that defendant directe
Warten to apply the credit of $520 to the credit of his mortgag
debt, then I charge you that the said Warten was obliged t
apply such payment or credit as directed.

W. R. WALKER, for appellant. SANDERS & THACH, for ap
pellee.

SAYRE, J.— (1) This action of detinue was brought b
Henry Warten against appellee for the recovery of horses, mules
baled hay, and farm implements. During the progress of th
cause Warten died, and there was a revivor by appellants a
his executors. Plaintiffs claimed title to the property in suit, wit
one exception to be noted later, under a mortgage executed b
defendant to their testator; while defendant claimed that th
mortgage title had been divested by payment and discharge o
the mortgage debt. Defendant adduced evidence the competenc
of which is not denied, going to show that upon a settlement ha
with deceased, dissolving relations between them, it was agree
in substance that defendant should have credit for "all expense
of the cattle business," then a thing of the past. By evidenc
of like character it was shown that during the year 1912 defend
ant had kept, pastured, and fed cattle for deceased, and ther
was evidence of the value in general of such services; but ther
had been additions to and subtractions from the herd from tim
to time, so that no disinterested witness was able to furnis
data for anything like a definite estimate of the credit claime
by defendant. It thus became a matter of importance to defend
ant that he should testify as to these matters, and, over objec

tions which took the point that the witness as a party interested in the issue tried was disqualified by section 4007 of the Code, he was allowed to testify to the number of cattle fed by him and the length of time they were fed.

So much of the section as comes into question reads as follows: "No person having a pecuniary interest in the result of the suit or proceedings shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding."

Defendant refreshed his recollection by referring to a book in which he had made contemporaneous entries; but it is conceived that this made no difference in the application of the rule of exclusion prescribed by the statute. Plainly, then, stated in its best form for appellant, the inquiry is whether, in testifying as to the length of time he had cared for the cattle of deceased and the number on hand each day during the period—nothing more—defendant testified as to a transaction with deceased. Plaintiffs saved their exceptions to the ruling in this form. But let it be noted at this point that the evidence to which exceptions were reserved was not offered to prove an express original promise on the part of the deceased to pay for the feeding of the cattle, nor to fasten liability on his estate by way of an implied promise so to pay. Nor was it offered as going to show the agreement for a credit, which agreement alone was the precise obligation defendant was seeking to enforce, and as to which the issue in the cause stood for decision on the testimony of entirely unobjectionable competency. The evidence under consideration had no tendency to prove the alleged agreement for a credit nor any bearing on that question, save as it tended to prove collateral facts, the effect of which was to change the aspect of the case as previously developed by defining the full meaning and operation of the agreement for a credit, if established, and for that purpose it was, we think, admissible under the rule of *Miller v. Cannon*, 84 Ala. 59, 4 South. 204.

But appellants rely upon *Miller v. Cannon* as establishing the inadmissibility of this testimony. It will be observed in respect of the opinion in that case that Chief Justice Stone, while reviewing some previous cases and undertaking to formulate a comprehensive statement as to the interpretation of the stat-

ute, did not in terms define "transaction." Perhaps, in view of the previous cases in which specific applications of the statutory rule had been made, he deemed any formal definition hardly worth while. Touching, however, upon the subject, he did say that testimony, the direct office and purpose of which is to corroborate or weaken, strengthen or rebut, other evidence of a transaction with decedent, is equally within the reason and spirit of the prohibition. This branch of the rule is illustrated by the decision in *Englehart v. Richter,* 136 Ala. 562, 33 South. 939, and perhaps *Ware v. Burch,* 148 Ala. 529, 42 South. 562, 12 Ann. Cas. 669, cited by appellants. But the Chief Justice, in *Miller v. Cannon,* allowed this qualification—herein by implication defining "transaction" as a transaction directly with deceased—that a witness, though interested, "may testify to pertinent collateral facts and transactions, not falling directly within the expressly prohibited class, although the effect may be to materially change the aspect of the case, and impair the probative force of the testimony," citing *Wood v. Brewer,* 73 Ala. 259, in which he had written that a transaction, to come within the class of transactions with a deceased person, "must be some act done by the deceased, or in the doing of which he personally participated." By reference to the facts in *Wood v. Brewer,* it will be seen that they bear a close analogy to the facts in the case before us, calling for the application of an identical principle, whatever the true principle may be. That case may therefore be considered as strongly persuasive, if not conclusive, in the case at hand. The authority of that case was not doubted in *Miller v. Cannon.* On the contrary, it seems to have afforded the basis for the qualification of the general rule there cited.

After the decisions to which we have referred, and other of our cases illustrating the application of the rule of exclusion to be cited hereafter, it may seem hardly necessary to go out of this state for authorities; still it may contribute something to a definition of the idea which we think must control our decision on this point to note the language and rulings of some other courts in construing similar statutes. In *Moores v. Wills,* 69 Tex. 109, 5 S. W. 675, it is said in general terms that the rule of exclusion does not apply to evidence of facts and circumstances which, though affecting a transaction, constitute no part of it. This is a shorthand, and yet adequate, rendition of the

[Warten, et al. v. Black.]

rule declared in *Miller v. Cannon.* In *Holcomb v. Holcomb,* 95 N. Y. 325, it is said that: "Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition, or language of another. \* \* \* It must appear that the interview or transaction sought to be excluded was a personal one."

See *Heyne v. Doerfler,* 125 N. Y. 505, 26 N. E. 1044.

*Ross v. Ross,* 6 Hun (N. Y.) 182, containing substantially this definition, is quoted with approval in *Duggar v. Pitts,* 145 Ala. 358, 39 South. 905, 8 Ann. Cas. 146. And in *Lerche v. Brasher,* 104 N. Y. 157, 10 N. E. 58, where an attorney sued for compensation for services rendered, and the contract of employment was proved by evidence open to no criticism, the plaintiff was allowed by the Court of Appeals to have been competent to testify that he got the papers in the case from a firm of attorneys and went to Albany to prepare the case for the Court of Appeals, these being in the opinion of the court, "independent facts, in which the deceased was not personally a participator and which, if living, he could not, for that reason have contradicted." In *Sullivan v. Latimer,* 38 S. C. 158, 17 S. E. 701, "transaction" is said to imply mutuality—something done by both parties acting in concert, in which both take some part. In *Belote v. O'Brian,* 20 Fla. 126, the word "transaction" was defined to mean "the doing or performing of any business, the management of an affair, the adjustment of a dispute between parties by mutual agreement," and plaintiff was allowed to testify as to the value of articles furnished and labor performed for deceased as being wholly independent of any personal transactions or communications with the deceased. In some of the states the statute on this subject excludes evidence of "personal transactions" with the deceased whose estate is interested. With statutes so worded our statute is precisely assimilated by the definitions of this court. And in those states "the rule of the statute does not operate to close the mouth of a witness as to any matter of fact coming to his knowledge in any other way [than] through personal dealings with the deceased person, or communciations made by the deceased to the witness in person. This is not only the language of the statute, but it is the thought

of the cases. 'The theory of the law is to close the mouth of the living person as to a matter in which he had a part.' "— *Shetler v. Stewart*, 133 Iowa, 320, 107 N. W. 310, 110 N. W. 582.

In that case the question was whether certain deeds of property in controversy had been delivered during the lifetime of the deceased grantor. A party in interest was allowed to testify in relation to his custody of the private papers of the deceased, including the deeds in question, during the lifetime of the latter. In *Hutton v. Doxee*, 116 Iowa 13, 89 N. W. 79, where the plaintiff sued the estate of his father, deceased, on a count for damages growing out of the alleged failure of the deceased to perform a contract whereby he agreed, on consideration of services to be performed by plaintiff on a farm, that he would make to plaintiff a deed of the farm, plaintiff was allowed to testify that he had taken possession of the farm and worked it for a number of years, making improvements thereon, these facts not constituting personal transactions with the deceased. In *Britt v. Hall*, 116 Iowa 564, 90 N. W. 340, the plaintiff in an action against an executor under a statute authorizing an illegitimate to inherit from the father in case he had been recognized, plaintiff's testimony as to the receipt of letters from her putative father recognizing the relations between them was received as not being evidence of a transaction with deceased. In *Ah How v. Furth*, 13 Wash. 550, 43 Pac. 639, a case in which the respondent sued an estate to recover for domestic services rendered to the deceased, it was held that the testimony of respondent that he worked at the house of the intestate and the character of the work performed by him was not testimony in relation to a "transaction had by him with, or any statement made to him by," the deceased. In *Daniels v. Foster*, 26 Wis. 686, a suit to foreclose a mortgage, the defendant sought to prove payment and a counterclaim for services, money advanced, etc., to the deceased mortgagee, and introduced letters of the deceased acknowledging payment, and testified to their genuineness, and that he received them by mail, and from that evidence the court found the mortgage satisfied. On appeal Dixon, C. J., made this exposition of the statute: "The statute forbids the examination of a party, in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person.

[Warten, et al. v. Black.]

\* \* \* But the personal transaction or communication of the statute, no doubt, means a transaction or communication face to face, or by the parties in the actual presence and hearing of each other."

And in *Relden v. Scott*, 65 Wis. 425, 27 N. W. 356, where plaintiff sued an executor for the value of work and labor done in keeping the books of deceased, it was held that plaintiff was a competent witness to prove that he kept the books of deceased, and with how much labor, and the value of these services. These are some of the cases. There are others of like tenor. See, also, Jones on Ev. §§ 785, 786, and notes. So the thought of our cases, though their expressions are scant on the point, is that a witness interested in the result of a suit or proceedings, though incompetent to testify as to any transaction with the deceased, may testify to any matter of fact *coming to his knowledge* in any other way than directly through personal dealing with the deceased.—*Borum v. Bell*, 132 Ala. 85, 31 South. 454; *McDonald v. Harris*, 131 Ala. 359, 31 South. 548; *Stiff v. Cobb*, 126 Ala. 384, 28 South. 402, 85 Am. St. Rep. 38; *Gamble v. Whitehead*, 94 Ala. 335, 11 South. 293; *Ala. G. Life Ins. Co. v. Sledge*, 62 Ala. 566; *Tisdale v. Maxwell*, 58 Ala. 40; *Miller v. Clay*, 57 Ala. 162; *Cousins v. Jackson*, 52 Ala. 262, as qualified in *Miller v. Cannon, supra*. The facts of these cases are readily accessible to the profession, and we will not stop to state them. In the present case defendant had fed and pastured the cattle on the plantation of deceased, where he was a tenant, more or less remote from his landlord's place of residence and business, and his testimony was carefully limited to what occurred on the plantation, facts involving no direct or personal communication or transaction with deceased. It does not even appear that plaintiff's testator, if alive, would have any direct personal knowledge of the facts, or would be able, out of his own recollection, though his memory were ever so good, to contradict defendant in the particulars testified to by him. It results, in our opinion, that defendant's evidence as to the number of cattle fed by him, and the length of time they were fed, does not fall within the common-law inhibition which has been perpetuated by the exception of section 4007 of the Code. A fortiori, defendant's testimony as to the value of the feeding and care of the cattle was admissible. Deceased, no more than any one else, had informa-

tion on that subject. Any one having knowledge of the general subject in the vicinity might have given an opinion.

*Dismukes v. Tolson,* 67 Ala. 386, is cited by appellants. That case was cited, arguendo merely, to *Mobile Savings Bank v. Mc-Donnell,* 87 Ala. 736, 751, 6 South. 703, 709, where its effect is thus stated: "We there ruled that original entries made by a defendant in his own shop books, although admissible ordinarily in his own favor under certain restrictions, as an exception to the common-law rule excluding parties, could not be proved by himself, in a suit brought by the administrator of a deceased person, where such entries had reference to a transaction with the deceased in his lifetime."

In *First National Bank v. Chaffin,* 118 Ala. 246, 24 South. 80, *Dismukes v. Tolson* was cited to the proposition that the books offered in that case were not admissible, because the witness who undertook to make formal proof of their regularity and accuracy had no first-hand knowledge of those facts. In *Murray v. Dickens,* 149 Ala. 240, 245, 42 South. 1031, Simpson, J., correctly noted the fact that *Dismukes v. Tolson* went off entirely on the point that the witness was not competent to testify to the correctness of the book, because it involved transactions with a deceased party, and that there was no ruling that the books would not have been admissible had the witness been qualified to make necessary preliminary proof. Indeed, the cited text (1 Greenl. on Ev. § 120) shows that it is because the entries are contemporaneous and ordinarily and naturally belong to the principal thing done—generally the delivery of goods by shopkeepers—that book entries are admitted, and it makes no difference, as to their admissibility, whether the party who made them was or was not interested in making them, his interest going only to affect the credibility or weight of the evidence when received. The case has been frequently cited as authority for other propositions which therein had incidental statement; but, so far as we have been able to find, the precise point on which it was decided has never since been brought into question.

The decision in *Dismukes v. Tolson, supra,* on the turning point of the case, had no precedent in this state. And at common law, while generally a party could not testify, yet he could give in evidence his books of account, supported by his own suppletory oath. He was allowed to testify, not as a general wit-

ness, but merely to establish the competency of the books—a preliminary question for the court, to be determined in favor of their admission if they appeared to have been fairly and honestly kept as books of original entry, and the relevant entries purported to charge the opposite party and appeared to have been made in the regular course of business at or near the time of the facts to which they related. "Shop book" evidence is a species of hearsay; but, out of necessity and to prevent frauds upon shopkeepers who would otherwise be unable to prove their accounts, it is admitted as the best evidence they can produce when the person who made the entries is disqualified as a witness, is dead, insane, beyond the jurisdiction, or unable to remember the facts. The whole matter is most clearly stated in *Bookout v. Shannon*, 59 Miss. 378, on the authority of Starkie on Ev. 679, and *Nichols v. Haynes*, 78 Pa. 174. As appears from the language and ruling of Field, C. J., in *Landis v. Turner*, 14 Cal. 573, testimony as to the competency of "shop books" is upon an incidental and preliminary matter, and the rule which excludes the testimony of parties has no application. The learned judge noted a different rule in New York, but was satisfied, after an extended examination, that the better rule, prevailing in nearly every state of the Union, was as stated above. To the same effect in Chamberlayne on the Modern Law of Evidence, § 3084, where many cases are cited to the text; *Dismukes v. Tolson* alone being cited contra. "By the very necessity, therefore, and for the purpose of identifying the books, the party, though otherwise disqualified (under the older law) as a witness, was allowed to make a so-called suppletory oath of identification." —2 Wigm. Ev. §§ 1554-1559. It would be a matter of curious reflection to find that our statute which was intended to enlarge the competency of parties as witnesses in consonance with modern theories of evidence, had in one very important particular the effect of imposing a disqualification where none existed at the common law.

(2) But the question here is different from that presented in *Dismukes v. Tolson*. The books in that case were offered under the rule now prevailing in this state which makes books of account evidence in themselves of the facts shown by the entries therein.—*Bolling v. Fannin*, 97 Ala. 619, 12 South. 59; *McDonald v. Carnes*, 90 Ala. 147, 7 South. 919. It may be doubted that

the book to which the witness referred in the case at hand was a shop book or book of account at all within the meaning of the rule of evidence on that subject. It does not appear that in the ordinary business in which the plaintiff witness was engaged there was any reason or necessity for keeping books of entry, or that he in fact habitually or regularly kept any books. It appears, rather, that the books in question contained only memoranda of facts concerning the feeding and management of the cattle and was intended to serve a temporary purpose only.— Chamb. Ev. § 3091; 2 Wigm. on Ev. § 1547. At any rate, the book was not offered in evidence, but was used by the witness only for refreshing his recollection. The witness was competent to testify to the facts to which his memoranda related—herein the case differing most materially from *Dismukes v. Tolson*, as it was ruled—and he was properly allowed to refresh his memory by reference to the use of such memoranda laid down in *Acklen v. Hickman*, 63 Ala. 494, 35 Am. Rep. 54; or, had the insufficiency of the memoranda to revive a faded recollection been exposed by a preliminary examination on that point, then, to meet that objection, they might have been made competent by further testimony of the witness going to show that he knew them to be true at the time they were made, such testimony and memoranda constituting together the equivalent of a present positive statement by the witness, affirming the facts, within the second rule of the case last above referred to. But the defendants took no objection to the use of the book as a memorandum on any ground that might have been afforded by *Acklen v. Hickman*. They proceeded entirely on the ground that the witness was incompetent by reason of the statute. This objection, as we have seen, was not well taken. Hence our conclusion that there was no error in admitting the witness to testify as shown by the bill of exceptions.

(3) Plaintiffs claimed one black horse not embraced in the mortgage. Defendant, while a tenant on the plantation of deceased, had got this horse from one Frost, to whom, without dispute, the animal previously belonged, and Frost had received from defendant payment of the purchase price in a check drawn by deceased payable to Frost. It was disputed between the parties whether the transaction between deceased, defendant, and Frost in reference to the horse was a sale to deceased or to de-

fendant. There was evidence of undeniable competency pro and con. The check, when introduced in evidence contained this indorsement—it is so referred to in the bill of exceptions—written, as the transcript seems to show, in the lower left-hand corner of its face: "For 1 Black horse about 7 years old on which he held the title of Owen Black to be credit with this amount & title of same horse shall rest in me."

A witness for plaintiffs, Warten's bookkeeper, testified that he wrote the check and the indorsement which was on it when deceased signed it. We infer that the bookkeeper handed the check to defendant, and afterwards it was delivered by defendant to Frost in payment for the horse. Frost stated his recollection to be that the "statement" was not on the check when delivered to him. Defendant also was permitted to testify that the indorsement was not on the back when it was handed to him. Appellants assign this ruling for error. In addition to what we have already said on this general subject, we cite cases which appear to be more closely in point, and which sustain the ruling of the court below admitting this peculiar negative testimony.—*Frank v. Thompson,* 105 Ala. 211, 16 South. 634; *Blount v. Blount,* 158 Ala. 242, 48 South. 581, 21 L. R. A. (N. S.) 755, 17 Ann. Cas. 392. *Frank v. Thompson* was overruled in *Payne v. Long,* 131 Ala. 438, 31 South. 77; but the effect of the ruling in the latter case was in turn limited in *Blount v. Blount,* *supra,* where it was held that a party in interest ought to be allowed to go so far as to simply deny that he had a transaction or conversation with the deceased, whose estate is interested in the result of the suit or proceeding.

(4) We have found no tenable objection to the testimony of Frost, drawn by defendant on cross-examination, that he [the witness] has asked Black "if he was buying the horse for Warten, and if he said 'No;' and I told him, if he was, he couldn't get it." This was of the res gestæ of the transaction, tended to show the seller's purpose, tended also to show defendant's purpose to the same effect, though not conclusively as against deceased or his representatives, and was competent, relevant, and material to the issue as to title. If deceased had a contract or understanding with defendant that the horse should become the property of him (deceased), that was a matter of further proof, and plaintiffs did in fact put their countervaining evi-

dence before the jury. The testimony in question was ineffectual, of course, to divest title out of deceased; but it was not offered for that purpose. It was offered, and legitimately tended, to show that deceased had never had title.

(5) There was no error in giving charges 1 and 4 for defendant. That these charges state correct propositions of law as far as they go is not denied. They had support in the evidence. Deceased had an unsecured account against defendant, as well as the mortgage debt. Testimony was given by a witness for defendant to the effect that at the time of the settlement between ceased and defendant the latter had directed that $520, the agreed amount of his compensation for services on the plantation—not including, however, the matter of the feeding of the cattle—should be credited on his mortgage debt. According to the witness, "Warten didn't say he would give the mortgage credit for $520, but Mr. Black told him to." Warten's bookkeeper, who was called in during the settlement, testified that: "Mr. Warten did, in the presence of defendant, state to witness to credit Mr. Black's account with his wage service; that Mr. Black said nothing about putting it on the mortgage in witness' presence; that, when Mr. Warten told witness to credit his account, defendant said nothing."

Witness credited the amount to the unsecured account. Appellants say on this evidence that the charges were faulty, and should have been refused, for the reason that they pretermitted any question of waiver by the defendant of the actual application of the credit so made and his ratification of same. We do not find that the evidence called for the suggested qualification of the charges. It was defendant's right to direct the application, and he had a right to assume, in the absence of information to the contrary, that it would figure in the settlement according to his direction. He did direct it, and this put upon plaintiffs the burden of showing that then or subsequently he agreed nevertheless, to a different application. But there is nothing to warrant the inference that, either at the time or subsequently, he acquiesced in the application which the bookkeeper attempted to make.

We find no error. All the Justices concur, except McClellan, J., who dissents.