(103 So. 892)

**MOORE v. MOORE et al.  (6 Div. 298.)**

(Supreme Court of Alabama.  April 9, 1925. Rehearing Denied April 30, 1925.)

**1. Reformation of instruments ⚙═32—Suit to reform deed not barred by laches because of cordial relationship between brothers, and because one brother had cultivated portion of land in dispute.**

A suit to reform a deed because of mistake in description of a boundary brought more than 16 years after execution of deeds against the widow and children of complainant's brother, with whom complainant had agreed concerning the division of property, would be barred by laches, except for the fact that, owing to the cordial relationship between the brothers, they had jointly used the land in dispute, and that complainant had cultivated a portion of such land.

**2. Reformation of instruments ⚙═45(5)—Rule requiring exact, clear, and convincing proof of mistake in description of boundary is not altered by statute.**

A deed will be reformed because of a mistake in description of a boundary only on certainty of error in description, which error must be shown by clear, exact, and convincing evidence that deed did not express the true agreement between parties, and Code 1923, §§ 6960–6962 does not alter this rule.

**3. Witnesses ⚙═158—Witness may testify as to facts coming to his knowledge in any other way than through decedent.**

The rule propounded by Code 1923, § 7721, relating to competency of witnesses as to transaction with deceased persons, does not operate to close the mouth of a witness as to any matter of fact coming to his knowledge in any other way than through personal dealings with the deceased, or communication made to the deceased in person, and this rule does not exclude evidence of acts of possession.

**4. Appeal and error ⚙═837(11)—Evidence of transactions with decedent not considered on appeal in suit to reform deed.**

On appeal in suit to reform a deed, because of alleged misdescription of a boundary, the Supreme Court, in view of Code 1923, § 6565, will not consider portions of testimony by a widow of one of the parties to the transaction, nor portions of the testimony by the complainant, who was also a party to the transaction, which evidence was incompetent under Code 1923, § 7721, where trial court stated that only competent evidence was considered in determining the suit.

**5. Reformation of instruments ⚙═45(5)—Evidence held insufficient to show with certainty that mistake was made in description of a boundary.**

Evidence in a suit to reform a deed because of mistake in description of a boundary held not to show with sufficient certainty that mistake was made.

Appeal from Circuit Court, Fayette County; R. L. Blanton, Judge.

Bill to reform a deed by W M. Moore against Mexico Moore and others. From decree dismissing bill, complainant appeals. Affirmed.

S. T. Wright, of Fayette, for appellant.

The testimony showed possession by complainant of the land for more than 20 years, with acts of ownership; it was error to deny reformation. Tenn. Valley v. Valley View Farm, 210 Ala. 123, 97 So. 62; Stover v. Hill, 208 Ala. 575, 94 So. 826; Holt v. Adams, 121 Ala. 664, 25 So. 716; Meyer Bros. v. Mitchell, 75 Ala. 475; Smith v. Bachus, 201 Ala. 534, 78 So. 888; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103; Stricklin v. Kimbrell, 193 Ala. 211, 69 So. 14; Veitch v. Hard, 200 Ala. 77, 75 So. 405; Jones v. McNealy, 139 Ala. 379, 35 So. 1022, 101 Am. St. Rep. 38; Code 1923, §§ 6960, 6961.

J. C. Shepherd, of Berry, for appellees.

The evidence was insufficient to warrant reformation. Hough v. Smith, 132 Ala. 204, 31 So. 500. Adverse possession by complainant extended only to the lands occupied by him. T. C. I. Co. v. Linn, 123 Ala. 112, 26 So. 245, 82 Am. St. Rep. 108. Reformation is granted only on a certainty of error, the burden to show which is on complainant. Hertzler v. Stevens, 119 Ala. 333, 24 So. 521; Alexander v. Caldwell, 55 Ala. 522; Berry v. Sowell, 72 Ala. 17.

SAYRE, J.  The bill in this cause was filed in April, 1923.  In 1901 J. W. Moore purchased a tract of land in Fayette county. In 1905 he suggested to his two sons, Willis and Harvey, that they agree among themselves upon a division of the tract, promising that he would make them deeds according to their agreement.  The sons agreed, and the father executed deeds, by which Willis acquired the title to 155 acres, mostly open land, Harvey 187 acres of wooded land. In 1921 Harvey died.  This bill is filed by Willis against Mexico, the widow of Harvey, and their children, its purpose being to reform the deeds of 1905 so as to vest in Willis the title to 74 or 75 acres of the land conveyed to Harvey.  At the hearing on pleading and proof the trial court dismissed the bill.

[1] With sufficient accuracy it may be said

that the dispute relates to two 40's which lie between complainant on the west and defendants on the east, and the mistake complained of would be remedied by a decree establishing the line between the east and west halves of the S. E. ¼ of section 35, township 16, range 11 west, instead of the west line of said quarter section, as (in connection with the Big Branch to which we will refer hereafter) it was laid down in the deeds. These brothers appear to have lived in a relation of undisturbed friendship and good neighborhood on the lands deeded to them respectively by their father until the death of Harvey in 1921. Complainant's contention is that, except 12 or 15 acres which he cleared and cultivated for some years, the two 40's in question, wooded land, were resorted to by both of them indifferently for such domestic uses as that part of the land in its state afforded, and that, so far at least as he was concerned, he was not aware until after the death of his brother that the dividing line had by the deeds been located as it was. But for this relation of good understanding between the brothers, which in one aspect of the evidence seems to have left the use of the land in dispute a matter of indifference between them, and but for the fact that complainant cleared and cultivated the patch of 12 or 15 acres above referred to, a fact tending in a measure to account for the delay in filing the bill in this cause—but for these considerations the rule followed in Rives v. Morris, 108 Ala. 527, 18 So. 743, would afford a satisfactory answer to complainant's bill, viz.:

"Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied. And this is true even though the demand is not barred by the statute of limitations, nor under the ban of the doctrine of prescription."

But, even though not conclusive, this delay must in equity weigh heavily against complainant.

[2] However, looking further for grounds of decision, we bear in mind that courts of equity do not grant the relief sought in this cause but only upon a certainty of error— error that must be shown by clear, exact, and convincing proof that the paper writing did not express the true agreement between the parties. Hough v. Smith, 132 Ala. 204, 31 So. 500. We do not consider that this rule as to the burden of proof has been changed by the Act of 1911, now appearing in sections 6960–6962 of the Code of 1923. That act, as we understand, was passed to confirm the principle of the ruling in Greer v.

Watson, 170 Ala. 334, 54 So. 487, the reasons for which were more elaborately stated in Goulding v. Blanchard, 178 Ala. 298, 59 So. 485, where it was held that a grantee in a conveyance correctly describing the property conveyed might maintain a bill to correct error in a remote conveyance in his chain of title to which he was not a party. It may readily be conceived that in such case the burden of proof need not rest so heavily upon the party seeking reformation as in a case in which he seeks to reform a conveyance to which he was a party. At any rate, the court is of opinion that the act referred to did not intend to change the salutary and time-honored rule as to the burden of proof, when the complainant attacks a conveyance to which he was a party.

[3, 4] Appellant insists that appellees, Mexico Moore and her children, are incompetent to testify in this cause by reason of section 7721 of the present Code, section 4007 of the Code of 1907. The rule of the section does not operate to close the mouth of a witness as to any matter of fact coming to his knowledge in any other way than through personal dealings with the deceased or communications made by the deceased to the witness in person. Warten v. Black, 195 Ala. 97, 70 So. 758. This rule does not exclude evidence of acts of possession. Again noting the fact that the issue in this cause is whether the deeds under which the parties claim correctly represent the transaction between the grantor, J. W. Moore, and his sons, the rule of exclusion on account of pecuniary interest would operate to take out of consideration, not only parts of the testimony of Mexico Moore, but also the most material part of appellant's testimony, to wit, that part of it in which he states a transaction between his brother and himself in and by which, as he says, the dividing line between them was agreed upon, and, while there were no specific rulings on evidence, the statement of the trial court is that competent evidence only was considered. This method of consideration was in accord with the prescription of section 6565 of the Code, and so the cause must be considered on this appeal.

[5] It is entirely clear that, as against the widow and children of the deceased, the grantor of 20 years ago joins the brother of deceased in his asserted belief that a mistake was made. We need not undertake to measure the extent to which their testimony has probably been colored by the suggestions of interest on the part of the brother and on the part of the grantor by an energetic dislike for his son's widow, for, conceding to their testimony the average integrity of men in their situation, it is still far from clear that a mistake was made. From the fact that the grantor allowed his grantees to arrange the division of the land, it seems fair to infer that he intended something like

an equal division, and we are of opinion now that the division made by the deeds executed closely approximated an equal division in respect of value. That it approximated equality in area appears on the surface of the deeds. On the other hand, the division contended for by appellant would give him nearly twice as much of the land in area and value as he contends should have gone to his brother. The parties went to the tax assessor of the county to have him draw the deeds for them, and the particularity of the descriptions written into them excludes the notion that the draftsman was at all indifferent or careless in what he did. He made the Big Branch from its crossing of the middle north and south line of the section down to North river the line of division, assigning small fractional parts of forties to one grantee or the other as they fell on one side or the other of the branch. Consideration of the two deeds in connection with the maps shown in the record leaves it hard, if not impossible, to believe that the draftsman was not instructed to make the branch between the points indicated the line of division between the two grantees, or that he failed to carry out his instructions with the care and correctness of a skillful conveyancer. The parties, they say, knew nothing of government land numbers, but they knew the land and they knew the branch, and when they instructed the draftsman, as they must have done, to make the branch the dividing line between the two grantees, they practically determined that the west line of the N. W. ¼ of S. E. ¼ from the branch down to the south line of the section, should constitute the remainder of the line, and prepared a very definite clue to the proper solution of this pending controversy, in which the issue, it may be well to note, is, not whether rights have been lost and acquired since then, but whether the deeds in question correctly represent what the parties then intended.

Both grantees were present, attending each to his own interest. The deeds showed the division between them; explicitly the deeds showed that Willis was getting 155 acres, Harvey 187. Grantor acknowledged before the judge of probate of the county that, being informed of the contents, he voluntarily executed the deeds. It would be strange in these circumstances if there occurred the mistake of which appellant complains. It would be passing strange if, during all these years, appellant failed to note that his deed called for an approximately equal division of the area of the tract, whereas, according to his contention, he had taken part in laying down a line which would have given him very nearly two-thirds of it.

The conclusion indicated, clear enough perhaps on the facts already stated, is strength-

ened by the fact that in 1914 the minerals under the two tracts in question, along with the adjoining land of the grantor, were sold at a price per acre, and the sum divided between the vendors in proportion to the acreage of their respective grants according to the deeds executed in 1905.

True, the patch was cleared and cultivated by appellant, and there are some other circumstances pro and con, of no great moment in any event, but a discussion of these matters we pretermit. Upon the record, which has had due consideration, the court reaches the conclusion that the alleged mistakes in the deeds to Willis and Harvey Moore have not been shown with that degree of certainty required by the law as a condition of the remedy by reformation, and that the decree under review was correctly rendered.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.