172 So. 897

## MARTIN v. SIMMS.

### 7 Div. 386.

Supreme Court of Alabama.

Feb. 18, 1937.

Rehearing Denied March 18, 1937.

Theodore J. Lamar, Walter S. Smith, and Walter S. Smith, Jr., all of Birmingham, for appellant.

Knox, Dixon, Dixon & Allen, of Talladega, for appellee.

BOULDIN, Justice.

This appeal involves a claim against the estate of a decedent for board, lodging, nursing, and care furnished by appellant to the decedent during the latter years of her life.

Decedent, an elderly spinster, a retired school teacher, about the year 1928 first rented a room from appellant, then running a rooming and boarding house in Birmingham. Later she took board and lodging at $30 per month, or $7 per week. This continued until the summer of 1931, when appellant, for business reasons, removed with his family to Atlanta, where he and his wife again ran a boarding house.

Late in the summer of that year appellant removed decedent to Atlanta.

The evidence, without substantial dispute, is to the effect that this was done at decedent's request. A lone woman, out of contact with near relatives, the nearest relative being a brother residing in another part of the state, himself old and feeble, she wanted to stay with appellant and family. Her mental faculties were then failing, but so far as she could make a choice, we are convinced she did choose and request to be taken to Atlanta. She lived there with appellant and family until her death in August, 1934.

In November, 1931, a few months after removal to Atlanta, decedent fell and frac-

tured her femur at the hip joint. She was removed to Grady Hospital, but after about a week was returned to appellant's home.

After long treatment and care, she got able to walk about the house, but from the date of her injury, she was physically an invalid, most of the time bedridden.

Senility progressed, and from the date of her injury, under the weight of the evidence, she is to be classed as non compos mentis.

Board and lodging, laundering, nursing, medical attention, and caretaking, furnished by appellant and wife during this period of some 33 months, is the basis of this claim.

Decedent owned an interest in real estate in Talladega, rented and looked after for her by Mr. Boynton, of Isbell National Bank. An account was kept in the bank in her name. The income from her property was deposited to this account, and, after she became unable to draw checks, cashier's checks were issued to her from time to time, which were received by appellant, indorsed in her name by him, and the proceeds appropriated by appellant on account of the services above noted. In this way a remittance of $40 was made October 8, 1931, followed by monthly remittances of $37.50 per month to June, 1932. Thereafter the monthly remittance was reduced to $25. Decedent had also a certificate of deposit of $600, representing her savings. In March, 1933, on call for additional funds, this certificate was cashed, and the proceeds, or most of them, remitted from time to time during that year. The full amount remitted to Atlanta, evidenced by checks appearing in the record, and the testimony of Mr. Boynton was $1,388.58.

On the trial it appears a bank official had in hand a full statement of decedent's bank account running from January 1, 1931, several months before appellant had any connection with her moneys. It appeared this statement showed total funds of $2,600, but included items for upkeep, repairs, taxes, etc., besides funds drawn prior to going to Atlanta. This statement was not offered in evidence and does not appear in the record. Appellant relied upon the direct evidence of what did go to Atlanta, to which there seems to be no substantial dispute. The evidence of Mr. Boynton makes it reasonably clear these remittances aggregated $1,388.58.

The inquiry then is whether appellant, under the evidence, is entitled to recover a balance over the amount received, and, if so, what amount?

■ Where, because of circumstances, a non compos mentis is taken under the personal care of one, not a legal guardian, nor so related as to be under a natural obligation so to do, and furnished a home and the personal care required in the particular case, a reasonable and just claim arises against the estate of the afflicted for remuneration. This claim is recognized by statute on the same basis as necessaries furnished to an infant. Code, § 6824.

■ Since the person of unsound mind is not in position to speak or act for himself or herself, and the expenses and ministries are peculiarly at the discretion and within the knowledge of the claimant, the burden is on him to show by satisfactory evidence the fact and value of such outlays and services.

■ When such stranger further assumes control and management of the estate of the non compos mentis, a position in which he is representing opposing interests, that of himself and the unfortunate, he occupies the position of trustee in invitum, and must render an accounting of his trust. In view of human nature, such accounting must clearly disclose the state of accounts between trustee and beneficiary before an allowance, or an additional allowance, will be awarded to such trustee for outlays and services on behalf of the beneficiary. Whetstone, per pro. ami, v. Whetstone's Ex'rs, 75 Ala. 495; Moody v. Bibb et al., 50 Ala. 245; Snodgrass v. Snodgrass, 176 Ala. 282, 58 So. 199; 32 C.J. p. 698, § 402; Note, 38 A. L.R. p. 40.

Appellee insists this rule has application here, and that it was essential for claimant to produce a detailed statement of outlays with vouchers, etc.

Appellant in this case had no possession and management of the estate of decedent such as gave birth to the rule stated. The small estate, now valued at probably $2,500, remained under the control of the agent and banker at Talladega. The remittances of income and corpus of savings were received and appropriated by way of compensation for current services, etc., rendered to decedent. The amount of such

receipts, as before noted, is established with reasonable certainty.

The trial court seems to have taken appellee's view on this question.

In our opinion, the issue of importance here, is what was the value of the services rendered to decedent. This was provable by any evidence shedding light on the inquiry as in other cases, the burden being on claimant as before indicated.

On the issue as to the character and value of services rendered decedent, appellant and his wife were examined orally before the court.

The depositions of some seven witnesses in Atlanta were offered by appellant. Among these were Dr. J. L. Howell, the physician in charge during the long treatment of the broken hip, and down to May 1, 1934, making some thirty visits; Dr. J. F. Hackney, city physician in charge from May 1, 1934, to her death; Mrs. Howell, a city nurse in charge during same period; Mr. Ellis, county guardian, who in May, 1934, qualified as guardian for decedent, and left her in appellant's keeping; Mr. and Mrs. Moore, who were boarding in the same house; and a Miss Kate Londergan. These all corroborate Mr. and Mrs. Martin as to the condition of the patient and the constant care and attention required.

Without prolonging details this line of testimony discloses decedent was a very helpless, demented woman, in need of much care, difficult to treat and to properly minister unto; had lost control of eliminations from bowels and kidneys, calling for much laundering, disinfection, bathing, change of apparel, bedding, etc.

Dr. Howell and Mrs. Howell had knowledge of conditions and the services rendered for most of the period.

All above-mentioned witnesses, except Mr. Moore and Dr. Hackney, who made no estimates, place the value of the services rendered at or above $130 per month.

The substantial evidence for appellee was the testimony in open court of Mrs. McDonough of the police department of Atlanta, who made one visit late in 1933 for the purpose of ascertaining the situation. Her evidence related to an inspection of the room occupied by decedent, its furnishings, heating, lighting, uncleanliness, etc., saying: " * * * A little boxed-up room on the porch, no ceiling, no plastering, no papering, no anything, with one small window in it, and as well as I remember there was a bed, with most filthy bed clothing, without any sheet that I could see at all, the clothes were all torn up, the sheet wasn't visible, and there was a little coil heater in the room and then over the inner wall was a dark grayish marble slab about that high and protruding from the inner wall about so high (indicating), and one chair. * * * I don't remember another thing in the room. If there was anything else much I would have noticed it because that is what I went to see her for."

■ We have gone more into details as to the testimony than we would otherwise, in view of appellee's reliance upon the rule that where the trial court has seen and heard the witnesses orally, or substantially all of them on the disputed issues, his decision is to be accorded on appeal the weight of the verdict of the jury.

This rule is not conclusive and should not be so applied as to discredit and minimize testimony of nonresident witnesses having knowledge of material facts. Because one or more witnesses come into Alabama and appear in court, must not prejudice the right of litigants to take testimony by deposition according to law, and have their testimony accorded the full credit to which it is entitled; weighed, however, in connection with the whole evidence.

The testimony of the witness on which appellee mainly relies, admittedly limited to one inspection, is to be weighed not only in the light of the testimony of Mr. and Mrs. Martin, but of the other witnesses having fuller knowledge of the nature and extent of services rendered the decedent.

■ The constant ministry to comfort and cleanliness under difficult conditions is reasonably established.

But there are circumstances that lead us in the exercise of the caution dictated by sound policy not to award the full monthly allowance named by claimant's witnesses.

While Mrs. Martin and Mrs. McDonough differ as to whether decedent's room joined Mrs. Martin's room, the evidence does not satisfactorily show the latter was greatly in error in her description of the room. That it was in an unfinished and uninviting condition, heated by a rather indirect and probably irregular method, we accept as true.

650

Again there is no evidence of the amount of the bill paid or incurred for medical services. This was easily proven. No allowance can be made for such item; nor should an allowance be made based on services including medical services furnished.

It further appears that claimant, assuming to act for decedent, known to be mentally incapable of appointing an agent, indorsed her name on the checks "by O. T. Martin" and drew the money thereon. While acquiesced in by the bank as a method of getting money to which appellant was entitled, we cannot approve, but here express our emphatic disapproval of this method of doing business.

Appointment of a lawful guardian in the premises would not only have met the requirements of law in drawing the money, but probably obviated a situation tending to breed lawsuits.

We are not willing, however, to hold these breaches cut off appellant's right to an allowance in such sum as equity and justice demand for actual services shown by satisfactory evidence to have been rendered under conditions, not due to any initial fault of appellant, but developed by time, and demanded by the humanities of the situation.

Every case must be determined by its own equities.

On very full consideration, we are of the opinion that appellant is due an average monthly allowance of $65 for 33 months, less the sums already received after November 11, 1931, leaving a balance of $871.42, on which interest will be allowed at 6 per cent. from the date of presenting the claim, viz., September 28, 1934, making the full amount due as of this date $996.32. A decree will be here entered accordingly.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

BOULDIN, Justice.

 The decree of the court below having been reversed and one here rendered, the costs of the suit in the court below, as well as the costs of appeal, should be covered by our decree.

Upon consideration, it is the decision of the court that the costs of appeal in this court and in the court below be taxed against the appellee; and the costs of suit in the court below be taxed one-half against the complainant, O. T. Martin, and one-half against respondent, Claudia Simms, as executrix; all costs taxed against the executrix to be payable from the estate of the decedent.

Let execution issue accordingly.

Opinion modified, and application overruled.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.