STATE ex rel. VAL CAMPBELL and PLUMA LOUISE PALMER, Plaintiffs in Error, v. FORREST CHAPMAN, as Judge of the County Judge's Court of Sarasota County, Sitting as Probate Judge, and HONORÉ PALMER, Defendants in Error.

1 So. (2d) 278

En Banc

Opinion Filed January 15, 1941

Rehearing Denied March 11, 1941

648

*Singeltary & Cornwall, A. B. Rowe, Frank Redd* and *J. Ben Fuqua,* for Plaintiffs in Error;

*John F. Burket* and *McKay, Macfarlane, Jackson & Ferguson,* for Defendants in Error.

. BROWN, C. J.—This case is before us on writ of error to

an order and judgment entered by the Circuit Court in and for Sarasota County, holding that the response of Hon. Forrest Chapman, as Judge of the County Judge's Court of Sarasota County, to the rule *nisi* in prohibition proceedings which had theretofore been issued by said circuit court to said county judge and to Honoré Palmer, on the petition of plaintiffs in error constituted a full and sufficient response to said rule, and sustaining the demurrer of Honoré Palmer to the petition for the writ, and ordering that the rule to show cause therefore issued against said Forrest Chapman as Judge of the County Judge's Court of Sarasota County, sitting as Probate Judge, and against Honoré Palmer, should be and was thereby discharged and the proceedings dismissed.

The petition for appointment as administratrix filed by Pluma Louise Palmer in the County Judge's Court of Sarasota County on May 25, 1939, reads as follows:

"Petition for Letters
of Administration

| Estate of | In Court of County Judge |
| Potter d'Orsay Palmer | Sarasota County |
| deceased. | State of Florida |

"To the Honorable Forrest Chapman, County Judge of said County:

"Your Petitioner Pluma Louise Palmer respectfully represents that she is a resident of the County of Sarasota and State of Florida, and her Post-Office address is Sarasota, Florida.

"That Potter d'Orsay Palmer late of the County of Sarasota and State of Florida died intestate on the 15th day of May, A. D. 1939, leaving heirs and legal representatives him surviving, viz.:

650

| "Name | Age | Relationship | Residence |
|-------|-----|--------------|-----------|
| "Pluma Louise Palmer | 23 | wife | Sarasota, Florida |

"That the said deceased died, seized and possessed of an estate, to-wit: REAL AND PERSONAL of the approximate value of UNASCERTAINED AT THE TIME OF FILING THIS PETITION situate and being in SARASOTA COUNTY, FLORIDA, and elsewhere.

"That your petitioner is the wife and sole heir at law of Potter d'Orsay Palmer, deceased.

"Your petitioner prays and she may be appointed administratrix of the estate of said deceased.

*"Pluma Louise Palmer*

"STATE OF FLORIDA }
COUNTY OF SARASOTA }

"The above named Pluma Louise Palmer being by me duly sworn, says that the foregoing petition by her subscribed is true.

*"Forrest Chapman*
"(SEAL) "County Judge."

The order of the County Judge of Sarasota County, made in response to said petition reads as follows:

'Order Appointing Administrator

"ESTATE OF POTTER D'ORSAY PALMER    } IN COUNTY JUDGE'S COURT SARASOTA COUNTY STATE OF FLORIDA

"The petition of Pluma Louise Palmer for Letters of Administration on the estate of Potter d'Orsay Palmer, deceased, late of said County, who died intestate on the 15th day of May, 1939, coming on this day to be heard, and it appearing to the court that the said Pluma Louise Palmer, is the widow and sole surviving heir at law of the deceased Potter d'Orsay Palmer,

"It is, therefore, ordered and adjudged that the said Pluma Louise Palmer be, and is hereby, appointed administratrix of the estate of said deceased and that, upon taking the oath prescribed by law and giving a bond to be approved by the undersigned in the sum of One Thousand ($1,000.) Dollars, letters of administration on the estate aforesaid be granted unto the said Pluma Louise Palmer.

"Done and ordered at Sarasota, Florida, this 25 day of May, 1939.

"(SEAL) *"Forrest Chapman,* County Judge."

The record also shows that the petition for amendment of the original petition for appointment as administratrix, filed in the office of the County Judge of Sarasota County on August 14, 1939, reads as follows:

*"In Re:* ESTATE OF
POTTER D'ORSAY PALMER
    deceased

"TO THE HONORABLE FORREST CHAPMAN, Probate Judge:

"Comes now Pluma Louise Palmer, by and through her attorney, Frank Redd, and respectfully represents unto the court that the Petition for Letters of Administration filed in this cause on May 25, 1939, should be amended and prays leave of the Court to amend said Petition so that it should and will contain the following paragraph as fully and completely as if the same were written on the face of the original Petition, to-wit:

"That at the time of the death of Potter d'Orsay Palmer, the said Potter d'Orsay Palmer was domiciled in the City of Bradenton, County of Manatee, State of Florida, and was a resident of the City of Bradenton, County of Manatee, State of Florida, and had approximately Three Thousand

($3,000.) Dollars of personal property in his home in the said City of Bradenton.

"*Frank Redd*

"Attorney for Pluma Louise Palmer."

"Amendment allowed. Ordered filed this 14th day of August, A. D. 1939.

"Exception noted

"FORREST CHAPMAN, County Judge.

"STATE OF FLORIDA }
"COUNTY OF SARASOTA }

"The above named Frank Redd being by me duly sworn, says that the foregoing Amendment to Petition by him subscribed is true."

"*Forrest Chapman,* County Judge."

Plaintiffs in error contend that the petition for letters of administration on the estate of her deceased husband filed by Palma Louise Palmer in the County Judge's Court of Sarasota County was not sufficient to invoke the power of that court to take jurisdiction, in that said petition did not allege that the decedent was *domiciled* in Sarasota County at the time of his death. Our attention is called to Section 79 of the Probate Act of 1935 (Chapter 16103) which, among other things, provides:

"Every petition for letters of administration shall be sworn to by the petitioner, his agent, or attorney and shall contain statements to the best of petitioner's information and belief, showing the domicile of the decedent at the time of his death;" etc.

The record shows that the petition so filed by Pluma Louise Palmer on May 25, 1939, alleged that she was a resident of the County of Sarasota and State of Florida, and "that Potter d'Orsay Palmer late of the County of Sarasota and State of Florida, died intestate on the 15th

day of May, 1939," "leaving petitioner, his wife, as the only heir at law," and that the decedent "died seized and possessed of an estate," real and personal, "situate and being in Sarasota County, Florida, and elsewhere."

Plaintiffs in error contend that the said petition was not sufficient to invoke the exercise of jurisdiction on the part of said county judge's court because of the failure to allege the *domicile* of decedent, and that the mere possession of the power to act in regard to a specific subject matter is of no consequence unless that power is properly invoked; that a court cannot act *sua sponte,* but that its power and jurisdiction to act must be called into activity by the act of some suitor concerned in some mode recognized by law; citing in support of this contention 1 Freeman on Judgments, Section 338 and also Section 338a, wherein it is said:

"Thus it is generally required that a man's estate be settled in the County where he resided at the time of his death. If it appears that letters testamentary or of administration were granted in a county in which the deceased did not reside, the whole proceedings must be regarded as void. Not only must the court have general power under the law which embraces the particular subject matter involved, but that power must have been called into operation by some application, petition, or other pleading presenting a subject matter within that class."

Section 365 of the same work is cited to like effect; also 15 C. J. 793; also Rodregas v. East River Sav. Inst., 2 Am. Rep. 555, wherein it was said: "A Surrogate cannot issue letters of administration until some person interested goes before him, and, on proper application, invokes the exercise of his jurisdiction."

Counsel for plaintiffs in error also cite 21 C. J. S. 121; Coffrin v. Sayles, 157 So. 236, 128 Fla. 622; and Lovett v.

Lovett, 93 Fla. 611, 112 So. 768. In the case last cited this Court said:

"The rule that jurisdiction of the subject matter, in the general abstract sense—the power of the court to adjudicate the class of cases to which the particular, case belongs—cannot be conferred by the acquiescence or consent of the parties, it is so universally recognized as to require no citation of authority. The kind of jurisdiction referred to by this rule is the power conferred on the court by the sovereign—which means with us the Constitution or statute, or both—to take cognizance of the subject-matter of a litigation and the parties brought before it, and to hear and determine the issues and render judgment upon the issues joined. Brown on Jurisdiction, Sec. 2 (2d Ed.); 35 C. J. 426; 16 C. J. 723, 734. 'The power to hear and determine a cause is jurisdiction; it is *"coram judice,"* whenever a case is presented which brings this power into action.' United States v. Arredondo, 6 Pet. 709, 8 L. Ed. 547. 'Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power.' Foltz v. St. Louis, etc., R. Co., 60 F. 316, 8 C. C. A. 635. But before this potential jurisdiction of the subject matter—this power to hear and determine—can be exercised, it must be lawfully *invoked* and called into action; the parties and the subject-matter of the particular case must be brought before the court in such a way that it acquires the jurisdiction and the power to act. There must be a right in dispute between two or more parties; a proceedings commenced under the proper rules of law; process must be served on the opposite party or parties in order that they may have an opportunity to be heard, or the property, if that be the

subject-matter of the action, must be within such juris-
diction, and the owner or person having the right to claim
it, or to be heard, must be notified as required by law of
the pendency of the proceeding. Brown on Jurisdiction,
Secs. 2 and 9; 15 C. J. 734, 797. The jurisdiction and
power of a court remain at rest until called into action by
some suitor; it cannot by its own action institute a pro-
ceeding *sua sponte*. The action of a court must be called
into exercise by pleading and process, prescribed or recog-
nized by law, procured or obtained by some suitor filing a
declaration, complaint, petition, cross-bill, or in some form
requesting the exercise of the power of the court. . . . *The
pleading bringing the matter before the court need not
necessarily be sufficient in law to withstand the test of a
demurrer, but as a general rule it must state, at least in-
ferentially, each material fact necessary to warrant the court
to deliberate thereon and grant the relief accorded,* which
must usually be the relief prayed, or at least not foreign
thereto—though as to the latter, the form of relief when
different from that asked, the judgment or decree may be
merely voidable, but not void. Brown on Jurisdiction, Sec.
2A; Ingram-Dekle Lumber Co. v. Geiger, 71 Fla. 390; 71
So. 552, Ann. Cas. 1918A, 971."

We have italicized certain language in the opinion above
quoted from which we think has an important application
in this case.

In 21 C. J. S., page 121, the following language appears
in the text:

"It is a general rule that every State may, within its
constitutional authority, prescribe the manner in which its
courts shall acquire jurisdiction, and if a new jurisdiction
is created by statute without its form of proceeding being
prescribed, such jurisdiction may pursue its own forms and

regulations if not inconsistent with the laws of the land. In any case, due modes of procedure must be pursued in order that the court may obtain jurisdiction, and where the mode of acquiring jurisdiction is prescribed by statute compliance therewith is essential or the proceedings will be a nullity, *although a failure to conform to the statute literally may be deemed to be an unimportant variation not affecting the jurisdiction of the court.*" (Emphasis supplied.)

And on page 122 of 21 C. J. S. the following appears in the text:

"As is stated in Corpus Juris, jurisdiction of a particular action is acquired by the filing of pleadings which show the case to be within the general class of cases which the court has jurisdiction to hear and determine, and a petition or complaint which shows this is sufficient to give jurisdiction, although it is defective in other respects."

The case of Lovett v. Lovett, *supra,* is cited in the notes to the above text.

Plaintiffs in error also cite the holding of this Court in State *ex rel.* Smith v. Petteway, 131 Fla. 516, 179 So. 666, wherein this Court held, as shown by the fifteenth headnote, as follows:

"15. The place of decedent's residence at time of her death is jurisdictional fact-question in proceeding for appointment of administrator of her estate, and is not conclusively established by such appointment, but may be shown in proper collateral action to disprove jurisdiction of court assuming to administer estate."

Headnotes 16, 17 and 18 of the same case read as follows:

"16. The county judge's court is not court of general jurisdiction in course of common law, and presumptions as

to jurisdiction not appearing of record are inapplicable thereto, but its jurisdiction should appear by its records, and its records and proceedings may be attacked in any collateral proceeding by showing absence of jurisdiction in particular case."

"17. A county court's findings that facts essential to jurisdiction thereof exist cannot be collaterally attacked."

"18. A finding of court first granting letters of administration that deceased was domiciled within court's jurisdiction cannot be collaterally attacked."

It is contended that the County Judge's Court of Manatee County is the only court which has made a definite finding that it had jurisdiction of the administration of the estate. However, this action of the County Judge of Manatee County took place some time after the County Judge of Sarasota County had assumed jurisdiction of such administration and the principal question before us is whether or not the petition filed before him by Pluma Louise Palmer on May 25, 1939, was sufficient to authorize the adjudication by the County Judge of Sarasota County of the jurisdiction of said estate and the granting of the letters of administration by him to said petitioner. If the County Judge of Sarasota County was authorized, on the petition filed, to take jurisdiction of said estate, the subsequent assumption, or attempt to assume jurisdiction of said estate by the county judge of some other county would not affect the jurisdiction of the court which had first taken jurisdiction, unless by a well founded and direct attack on such first court's jurisdiction it was found that under the actual facts, relating to the domicile of the decedent, that court had erroneously and improperly assumed jurisdiction to begin with.

It is also contended by plaintiffs in error that even if the

County Judge's Court of Sarasota County was justified in assuming jurisdiction of the estate to begin with, the subsequent allowance by that court of an amendment to the original petition for granting of letters of administration (referring to the amendment which was allowed to be filed on August 14, 1939, to the effect that at the time of his death Potter d'Orsay Palmer was domiciled and was a resident of Manatee County), absolutely took away and destroyed any semblance of jurisdiction which the County Judge's Court of Sarasota County had ever had, if any. It is contended that the amendment having been duly allowed by the court and having been filed, related back to and became a part of the original petition precisely as if the original and amendment petition had been filed at the same time; citing Standard Encyc., Vol. 1, page 928; So. R. Co. v. Horine, 121 Ga. 386, 49 S. E. 285; American Brewery Co. v. Williams, 5 Orleans App. 274.

Plaintiffs in error also cite Redfearn on Wills and Administration of Estates in Florida, page 125, Sec. 106, wherein it was said:

"The county judge to whom an application for probate is made is proper tribunal to determine his own jurisdiction and a judgment of the county judge granting letters of administration or letters testamentary cannot be impeached collaterally on the ground that the decedent resided in a different county. The jurisdiction of such county judge cannot be questioned legally by instituting proceedings in another county unless the former proceedings were a mere nullity, such nullity appearing on the face of the record."

The above quotation from Mr. Redfearn is immediately followed by the following sentence: "The proper method of attacking jurisdiction is by petition to the county judge who rendered the judgment to vacate or set aside the

same." In the same paragraph it is stated that: "An appeal to equity may be made where the judgment of the county judge has been procured by fraud. The county judge would also have jurisdiction."

Plaintiffs in error contend that the granting of letters of administration by the County Judge's Court of Sarasota County did not constitute a finding or adjudication of the facts essential to his jurisdiction, one of which was the place of domicile of the deceased at the time of his death, and hence was not sufficient to place the jurisdiction of said court beyond collateral attack, and that this conclusion is inescapable in the light of the authorities cited by them.

Defendants in error cite the case of Epping, Bellas & Co. v. Robinson, 21 Fla. 36, referring to the holding of this Court as disclosed by headnotes 1 and 3. The first, second, third, sixth and seventh headnotes in the case thus cited read as follows:

"1. The county court has general and exclusive jurisdiction, by statute, to grant letters of administration. The order granting letters is the exercise of jurisdiction, involving the adjudication or jurisdictional facts. The judgment cannot be attacked collaterally by proof *aliunde* the record to disprove the jurisdictional facts already adjudicated by the county court."

"2. But the county court is not a court of general jurisdiction in the course of common law, and the rule of presumptions, as to jurisdiction not appearing of record, is not applicable to this Court. Its jurisdiction should appear by its records, and when its records and proceedings do not disclose jurisdiction in a particular case, they may be attacked in any collateral proceeding by showing the absence of jurisdiction."

"3. Yet there are two exceptions to the rule that the

order and judgment of the county court cannot be impeached collaterally by proof outside the record, to-wit: the fact that the supposed intestate is not dead, and the fact that letters have already been lawfully granted in the State and not revoked. In such cases jurisdiction is impossible."

"6. A plea that letters of administration were improperly granted and void because deceased left no goods, chattels or lands in this State, deceased having died out of the State, and that the county court was without jurisdiction to grant letters, as appeared upon the face of the records of the county court granting the letters, is a good plea that the letters are void."

"7. A plea in such case simply alleging the absence of certain jurisdictional facts, but not averring that the County Court has not adjudicated upon these facts (the granting of the letters being *prima facie* evidence that the court had so adjudicated, is not a good plea that the letters were void. The judgment of the county court granting the letters is generally conclusive as to all matters properly before it, including jurisdictional facts, until reversed or set aside by direct proceedings, with the exceptions before stated, and the facts so adjudicated cannot be re-examined collaterally."

It thus appears that the County Judge of Sarasota County did determine, by his order granting letters of administration, and did adjudicate, that he had jurisdiction; at least said order granting such letters was *prima facie* evidence that the court had so adjudicated. And it will be recalled that in the petition filed by Palma Louise Palmer, she alleged that she was a resident of Sarasota County and that "Potter d'Orsay Palmer, late of Sarasota County and State of Florida, died intestate on the 15th day of May, A. D. 1939"

and that he died seized and possessed of real and personal estate situated in Sarasota County and elsewhere, and that petitioner was his wife and sole heir at law. And the order of the County Judge begins with these words:

"The petition of Pluma Louise Palmer for letters of administration on the estate of Potter d'Orsay Palmer, deceased, late of said county, who died intestate on the 15th day of May, 1939, coming on this day to be heard, and it appearing to the court that the said Pluma Louise Palmer is the widow and sole surviving heir at law of the deceased Potter d'Orsay Palmer, it is therefore ordered and adjudged," etc.

But as above shown, plaintiffs in error contend that the words "late of said county" were entirely insufficient and that the said order, and the granting of letters, therefore constituted no adjudication of the prime jurisdictional fact. However, it was held in the Epping case above cited that: "The order granting letters is the exercise of jurisdiction, involving the adjudication of jurisdictional facts."

Among the cases holding that where letters have already been lawfully granted in the State and not revoked, proceedings for the administration of the estate in another county may be restrained are: McDonnell v. Farrow, 132 Ala. 227, 31 So. 475; Andrew v. Avery (Va.), 73 Am. Dec. 355; Sample v. Adams (Ind.), 100 N. E. 573; and other cases cited in the briefs.

Defendants in error contend that the order of the County Judge of Sarasota County granting the issuance of letters of administration in the estate of Potter d'Orsay Palmer, not being entirely void and without effect, is not subject to collateral attack by petition for writ of prohibition or otherwise; citing Malone v. Meres, 91 Fla. 709, 109 So. 677; the first headnote of which reads as follows:

"1. A judgment that is absolutely null and void—a mere *brutum fulmen*—can be set aside and stricken from the record on motion at any time and may be collaterally assailed, but a judgment that is voidable only, because irregular or erroneous, must be moved against in time by motion to vacate, or by resort to an appellate tribunal, otherwise it becomes an absolute verity, and passes beyond the control of the courts to disturb."

The application of this rule in prohibition proceedings is illustrated by the cases of State *ex rel.* Everette v. Petteway, 131 Fla. 516, 179 So. 666, and *In re:* Newkirk, 114 Fla. 552, 154 So. 323. The last cited case involved the writ of prohibition to restrain orders and processes to enforce final decree in equity which final decree was held not to be wholly void, and the rule *nisi* in prohibition was denied.

Defendants in error admit that Section 43 of the Probate Act of 1933 with relation to "the venue of probate proceedings," provides that the probate of wills and granting of letters of administration shall be "in the county in this State where the decedent is domiciled," and that "if the decedent has no domicile in this State, then in any county in which the decedent was possessed of any property." They also admit that Section 79 provides that the petition for letters of administration shall contain a statement to the best of the petitioner's information and belief, showing the domicile of the decedent at the time of his death; but they contend that the words in the petition and also in the order of the Sarasota County Court granting letters of administration alleged that the decedent was "late of Sarasota County," and that he left real and personal property in said county, constituted a sufficient basis for the adjudication by the County Judge of Sarasota County that he had jurisdiction;

citing Woerner on American Law of Administration, Vol. 2, page 858, where the following appears:

"In the majority of States, however, the rule is less stringent, and jurisdiction will be either presumed or inferred from such facts as may be stated, or from the judgment or decree itself (citing Robinson v. Epping, 24 Fla. 239). And in some States the grant of letters is not avoided where there is no written application at all. So, for instance, the statement in the petition referring to the decedent as 'late of' a county named, is held sufficient averment of the decedent's domicile in such county at the time of his death." And cases cited, note 3 of page 859.

Defendants in error also cite several cases which have been decided since said edition of Woerner's work where the words "late of a named county" were held to be sufficient compliance with the statute of the several States involved to give the probate court jurisdiction to proceed. Thus in the case of Beckett v. Selover, 68 Am. Dec. 237, the opinion of the California court contains the following:

"The application for letters of administration must be in writing, signed by the applicant, and must state the facts essential to give the court jurisdiction of the case. The jurisdictional facts in this case were the death and residence of the deceased. The words of the statute are, that "administration shall be granted, first, in the county of which the deceased was a resident at or immediately previous to his death. . . .

"Flower, in his petition, described the deceased as 'late a resident of San Francisco County,' and it was objected that this was not sufficient, as it did not follow the words of the statute. But this objection would not seem to be fatal. There is no provision of the statute requiring the very words of the law to be used, as no precise form of petition is

given. In such cases, though always safe to follow the words of the statute literally, it is not absolutely necessary, but equivalent words will answer. And from the authorities cited by defendant's counsel, the term 'late' would seem to be fully as strong as the words of the statute. In the connection in which it is found, the evident meaning is that the deceased was late a resident of San Francisco County."

To like effect see Ewing v. Mallison (Kan.), 70 Pac. 369; Reynolds v. Lloyd Cotton Mills (N. C.), 99 S. E. 240. In the case last cited in North Carolina the Court, quoting from one of the former decisions, had this to say:

"This court has held that the proper recital in a judgment makes it upon its face valid, but it is competent for a party to show the truth of the matter, if the recital be false; but this must be done directly and not collaterally. . . .

"The application for letters in this case recited 'that James Scism, late of said County of Lincoln, is dead, intestate,' etc. We must take this to mean that he was domiciled in Lincoln county, and thus construed it shows the proper domicile. The language used was not very apt, but is sufficient by fair construction to show domicile at least *prima facie*. We would 'stick in the bark' if we held otherwise, by adhering strictly to the letter. It results, therefore, that the direct proceeding to recall the letters was the proper one."

The general jurisdiction of the County Court of Sarasota County over the class of cases to which this particular case belongs is clearly settled by Section 38 of the Probate Act of 1933 which reads as follows:

"Section 38. JURISDICTION OF COUNTY JUDGE.—The county judge shall have jurisdiction of the administration, settlement and distribution of estates of decedents, the

probate of wills, the establishment of lost or destroyed wills, the granting of letters testamentary and of administration, and of all other matters usually pertaining to courts of probate."

In Vol. 1 of Woerner on American Law of Administration 3rd Ed., at page 504, the author says:

"Although probate courts are mostly, if not universally, courts of record, having a seal, a clerk or authority to act as their own clerk, and executive officers, yet their procedure is, generally, summary, requiring no pleading in the technical sense, nor adherence to artificial rules in the statement of the cause of action or defense. An intelligible statement of an existing substantial right, which the court has jurisdiction to enforce, is a sufficient allegation of all matters necessary to sustain a judgment;" etc.

The principal thus enunciated is made statutory in this state. The first two paragraphs of Section 45 of said Probate Act read as follows:

"Section 45. PLEADINGS.—The pleadings before the county judge in probate matters shall be in writing and signed by the pleader or his attorney. All technical forms of pleadings are abolished. No defect or form shall impair substantial rights; and no defect in the statement of jurisdictional facts actually existing shall render void any proceedings.

"Petition: The petition shall state in short and simple manner the facts constituting the jurisdiction of the court and the ground of the proceedings, and shall pray for such relief as is desired. It shall be filed before any process shall issue."

In the case of Torrey v. Bruner, 60 Fla. 365, 53 So. 337, it is stated in the opinion that "the appellant presented to the County Judge for Lake County, Florida, an amended

petition in which it is in brief alleged that on June 27, 1906, Edward Warren Day, late of Brooklyn, Kings County, N. Y., died at Brooklyn, leaving his last will and testament;" etc.

The sufficiency of the petition was attacked on other grounds but apparently not on the ground that the words "late of" were insufficient to allege the residence of the decedent. The court, inferentially, so held in sustaining the right of the petitioner to ancillary letters. The frequency with which this term "late of" has been used in petitions for letters of administration in this and other States would indicate that it must have been contained in some printed forms for petitions for letters of administration which have been in quite general use.

Although the exact question is not presented, the case of Lowenthal v. Mandell, 125 Fla. 685, 170 So. 169 is of interest in this general connection.

In view of the foregoing authorities and the language of this Court in Lovett v. Lovett, *supra,* that "the pleading bringing the matter before the court need not necessarily be sufficient in law to withstand the test of a demurrer, but as a general rule it must state at least inferentially, each material fact necessary to warrant the court to deliberate thereon and grant the relief accorded," we hold that the petition for letters of administration filed by Pluma Louise Palmer in the county judge's court was sufficient to invoke the jurisdiction of the County Judge's Court of Sarasota County, and that by entering its order thereon and granting the letters of administration that court adjudicated and determined its jurisdiction, and that such adjudication could not be collaterally attacked.

Now as to the contention that, when the attorney for the administratrix, with the permission of the court, amended

her petition for letters of administration over two months after the court had entered an order taking jurisdiction and granting letters, and after considerable proceedings had been had in that court, said amendment alleging that decedent was a resident of and domiciled in Manatee County at the time of his death, was sufficient to divest the Sarasota County Court of the jurisdiction that it had assumed and to revoke the letters that it had granted over two months prior to the time the amendment was allowed to be made, we must say that we are convinced that this contention, while plausible, is not sound.

It is the judgment of the court, its action adjudicating its own jurisdiction, which is invulnerable to collateral attack and which cannot be destroyed by the mere filing of a pleading, even though filed with the permission of the court. If the petition originally filed was sufficient to invoke the jurisdiction of the county judge's court, as we have held that it was, and if that court had the power to determine whether or not it had jurisdiction to proceed, and had so determined and granted the letters of administration, then its judgment, being with reference to a general subject matter over which its authority extended under the statute, is conclusive against all the world, unless reversed on appeal, or voided for error or fraud in a direct proceeding. It matters not how erroneous the judgment, that judgment becomes the law of the case, pronounced by the tribunal created for that purpose, and is not only not subject to collateral attack, but it cannot be destroyed or taken away by the mere filing of a pleading, which may or may not be true, alleging in effect that the court was without jurisdiction at the time the original petition was filed. See Woerner on American Law of Administration, 3rd Ed., Vol. 1, page 488-492; Pitts v. Pitts, 120 Fla. 363, 162 So.

708.; Fiehe v. Householder,. 98 Fla. 627, 125 So. 2; Torey v. Bruner, *supra;* Sample v. Adams (Ind.), 100 N. E. 573.

In the last cited case, the Indiana Court considered the validity of the appointment of an administrator by the Probate Court of Tipton County after an administratrix had been appointed by the Probate Court of Clinton County, said administratrix having resigned. The court held that the acceptance of the resignation of the administratrix by the probate court of Clinton County amounted to an annullment of the letters of administration delivered to her but that such letters only gave her personal authority to proceed with the due administration of the estate and that the revocation of such letters did not set aside or modify the adjudication that the Clinton County Court had jurisdiction of said estate, and that while such order remained in force, the appointment of an administrator. in another court of coördinate jurisdiction was a collateral attack upon the jurisdiction of the probate court of Clinton County.

Subsequent to the filing of the amendment aforesaid the administratrix in this case filed her petition to set aside and vacate the order granting letters of administration to her which had been entered by the Probate Court of Sarasota County, on the ground that the decedent was domiciled in and a resident of Manatee County at the time of his death. To this petition, Honoré Palmer, a creditor of the estate, filed his traverse of such allegation. Upon the issues so framed the County Judge of Sarasota County properly proceeded to take testimony to determine the truth of the matter, as shown by his return to the rule *nisi* in prohibition.

In 15 C. J. 851, it is said:

"Every court has judicial power to hear and determine the question of its own jurisdiction, both as to parties and as to subject matter, and necessarily does so by proceeding

in the cause. When at any time or in any matter it is in good faith represented to the court by a party or an *amicus curiae* that it has not jurisdiction, the court will examine the grounds of its jurisdiction before proceeding further. The court may receive testimony on a preliminary question to determine its jurisdiction, and is not bound to dismiss the suit on a mere allegation of lack of jurisdiction, but may inquire into the correctness of the averment. A court cannot pass on its own existence as a court."

See also in connection with this general question Shankle v. Ingraham (N. C.), 45 S. E. 578; 15 C. J. 822; O'Connor v. Stanley, 55 Fed. (2d) 18. And in New York State it is held that the word "residence,' used in Section 2515 of the New York Code in connection with the jurisdiction of surrogate's courts to grant letters of administration, is synonymous with "domicile." *In re:* Seymour, 177 N. Y. S. 702; Daggett v. Chatham Phoenix Bank, 174 N. E. 641.

We deem it unnecessary to consider the question as to whether or not Pluma Louise Palmer was estopped to question the jurisdiction of the County Judge's Court of Sarasota County, which jurisdiction she had herself invoked.

For the reasons above pointed out we find no error in the order of the circuit court to which this writ of error is addressed and the order and judgment of the circuit court is accordingly affirmed.

Affirmed.

TERRELL, C. J., WHITFIELD, BUFORD and THOMAS, J. J., concur.

ON PETITION FOR REHEARING

THOMAS, J.—It is asserted in the petition for rehearing that that part of the opinion in this case which referred to the efficacy of the issuance of letters of administration is in direct conflict with the announcement of this Court in

State *ex rel.* Everette, *et al.,* v. Petteway, 131 Fla. 516, 179 So. 666, and reference is made to headnote 15 of that opinion. When the opinion in the cited case is scrutinized it is clear that the Court adopted the rule that the jurisdictional fact of the residence of a deceased person is not conclusively established by the appointment of an administrator and may, therefore, be collaterally attacked, but that "a finding that facts essential to jurisdiction exist" cannot be thus challenged.

In the instant case the rule *nisi* in prohibition proceeding issued by the circuit court to the county judge's court was served, according to the return, after an inquiry into the facts had been undertaken by the latter and before its conclusion. The action of the circuit judge in quashing the writ upon the return showing these circumstances was proper.

Rehearing denied.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, C. J., dissents.

WHITFIELD, J. (concurring).—An appellate court having jurisdiction *may, in proper cases,* by the discretionary writ of prohibition, determine the legality of the exercise of jurisdiction by a lower court in a pending cause, whether the lower court had merely assumed, or had specifically adjudicated, that it had jurisdiction. Substantial questions of the lack of jurisdiction of a court in a cause, if duly presented to the proper court having jurisdiction to issue the writ of prohibition in appropriate proceedings, may be determined at any time during the pendency of the cause, subject to authorized judicial review. In this case, when the response of the county judge to the rule *nisi* in prohibition sufficiently showed that he had assumed and was exercising jurisdiction, and was justified in doing so, the

circuit court properly quashed the discretionary rule *nisi* in prohibition proceedings issued by him. On writ of error taken to the order quashing the rule *nisi,* the order was affirmed. In the Everette case the jurisdiction of the county judge was specifically adjudicated by him.

BUFORD, J., concurs.

BROWN, C. J. (dissenting).—The above opinions as I understand them, leave the question presented by the first ground of the petition for rehearing unanswered, except as it was answered in the original opinion filed in this case, which answer the above opinion now holds, or appears to hold, was erroneous. Carefully read, I do not think there is any real conflict between the opinion (not the headnotes) in State *ex rel.* Everette v. Petteway and the original opinion in this case, but in order to clear up all doubts, I think rehearing should be granted on first ground of the petition.