75 So.2d 144

**Lena BURNETT**

v.

**Robert C. GARRISON.**

**6 Div. 547.**

Supreme Court of Alabama.

Aug. 30, 1954.

Rehearing Denied Nov. 4, 1954.

624

D. G. Ewing, Earl McBee, Birmingham, for appellant.

J. L. Drennen, Birmingham, for appellee.

CLAYTON, Justice.

This is an appeal with bill of exceptions from a decree of the Probate Court of Jefferson County on conflicting petitions

for letters of administration on the estate of Mary Jane Speed who died in said county on January 2, 1953. On January 7, 1953, Lena Burnett, appellant, filed her petition for letters of administration in which she described herself as friend and former guardian of decedent. Robert C. Garrison, appellee, on January 8, 1953, filed his petition in which he referred to himself as General County Administrator of Jefferson County. It is admitted that the next of kin of decedent are five second cousins who are non-residents of Alabama. The estate of Mary Jane Speed consists of some $2,500 in cash in the hands of said Lena Burnett, as guardian, and real estate in Jefferson County valued at about $15,000.

On the day set for hearing both petitions, Robert C. Garrison filed a substituted petition which alleged that he was nominated by all the heirs of the decedent, and Lena Burnett filed a substituted petition in which she described herself as "being a creditor of said estate and a friend of said deceased." On the hearing, the Probate Judge took testimony in support of, and in opposition to, both petitions, and after taking the matter under advisement, made a decree on February 2, 1953, finding that Lena Burnett was not a creditor of said estate, denying her petition and granting the petition of Robert C. Garrison.

It is undisputed that Mary Jane Speed was adjudicated non compos mentis on or about October 2, 1950, from which time Tom Reese was her legal guardian until about August 28, 1951, when appellant was appointed her guardian and continued to be such until the death of Mrs. Speed. Both appellant and appellee are residents of Alabama.

The applicable statutes to be considered by us are sections 81 and 69 of Title 61 of the Code of Alabama, 1940, which read:

"§ 81. Order of grant of administration.—Administration of an intestate's estate must be granted to someone of the persons herein named if willing to accept and satisfactory to serve in the following order: 1. The husband or widow. 2. The next of kin entitled to share in the distribution of the estate. 3. The largest creditor of the estate residing in this state. 4. Such other person as the judge of probate may appoint. (1931, p. 649; 1936, Ex.Sess., p. 29.)"

"§ 69. Persons disqualified as executors or administrators.—No person must be deemed a fit person to serve as executor who is under the age of twenty-one years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence, or want of understanding is incompetent to discharge the duties of the trust. Nor shall any non-resident of the state be appointed as administrator except he be at the time executor or administrator of the same estate in some other state or territory or jurisdiction, duly qualified under the laws of that jurisdiction."

The provisions of § 69 apply to administrators. Griffin v. Irwin, 246 Ala. 631, 633, 21 So.2d 668, 158 A.L.R. 288; Crommelin v. Raoul, 169 Ala. 413, 53 So. 745; Williams v. McConico, 27 Ala. 572.

The effect of the decree of the Probate Court was to find that appellant was not entitled to a preference under subdiv. 3, of § 81, and then to make appointment of appellee as administrator under subdiv. 4, of said section.

It is clear that if appellant occupied a preferred status under § 81, and did not suffer any disqualifying disability as provided by § 69, she was legally entitled to the appointment and the cause should be reversed on that account. For the Probate Court has no discretion in respect to enforcing the preferential right of one to serve as administrator if he is a fit person. It may not weigh the respective qualifications of two applicants and choose between them if one of them has a statutory preference. Hollis v. Crittenden, 251 Ala. 320, 37 So.2d 193; Loeb v. Callaway, 250 Ala. 524, 35 So.2d 198; Griffin v. Irwin, supra; Calvert v. Beck, 240 Ala. 442, 199 So. 846.

"These enumerated grounds of unfitness are held to be exclusive and

disqualification of an applicant to administer an estate who is otherwise entitled to preference, not based on one of these specified grounds, is not authorized. Crommelin v. Raoul, 169 Ala. 413, 53 So. 745; Nichols v. Smith, 186 Ala. 587, 65 So. 30; Bell v. Fulgham, 202 Ala. 217, 80 So. 39; Marcus v. McKee, 227 Ala. 577, 151 So. 456." Griffin v. Irwin, supra. [246 Ala. 631, 21 So.2d 669.]

 The substitution of the word "satisfactory" in the Act of 1936, now § 81 of Tit. 61 of the Code, for the word "fit" in the older Codes made no change in the meaning of the statute. Moore v. Strickland, 246 Ala. 624, 21 So.2d 665. While appellee offered evidence in the court below to show that his appointment would be pleasing to the next of kin by introducing their letters and telegrams attempting to nominate him for appointment, these could not give him any preferred status as defined by § 81 for two reasons. The next of kin are all non-residents of Alabama, and not only occupy no preferential position, but are themselves disqualified from serving as administrators. Tit. 61, § 69, Code of 1940. Starlin v. Love, 237 Ala. 38, 185 So. 380. Moreover, one occupying a preferential status cannot delegate his preferential status to another, Bivin v. Millsap, 238 Ala. 136, 189 So. 770; Curtis v. Williams, 33 Ala. 570; 33 C.J.S., Executors and Administrators, § 44, p. 940, (except in certain situations authorized by statute which have no application here. See § 84, Tit. 61, Code of 1940.)

 So the only effect that could have resulted from this evidence was to apprise the court of the wishes of the next of kin for its consideration in the event that no person having a preferential status under the statute should apply for letters of administration, and the fact that the next of kin desired the appointment of appellee as administrator was a factor which the court might consider in the event it should find no applicant entitled to a statutory preference. 33 C.J.S., Executors and Administrators, § 44, p. 940.

Appellee does not on appeal, nor did he in the court below, claim any preferred status.

His position here and there was that neither he nor appellant held a preferential position within the terms of the statute, and that the Probate Court could in its discretion, under the fourth subdivision of § 81, appoint appellant, appellee, or any other qualified person as administrator.

Appellant's assignments of error can be summarized as two broad propositions: First, she asserts that she has proven sufficient facts by the testimony to place her in a preferred position by reason of being a creditor of the estate, and the Probate Court on that account could not properly have denied her the appointment. Second, if the evidence did not adequately prove her preferred category, the court committed error in sustaining appellee's objections to questions directed to her as a witness designed to elicit her own personal testimony which would have proven her entitled to such preferential appointment.

We consider the first proposition. Appellant's amended petition refers to her as "your petitioner being a creditor of said estate and a friend of said deceased, an inhabitant of this state, above the age of twenty-one years, and in no respects disqualified under the law from serving as administrator * * *."

The question was raised on the hearing and assigned as error on appeal that averments in the petition are not in the language of § 81 of Title 61 of the Code, nor do they substantially aver facts to place appellee within one of the four subdivisions of said section.

We are familiar with the fact that strictness of pleading is required in the petition in some jurisdictions, as illustrated by the following:

"A petition for the appointment of an administrator should affirmatively show the existence of jurisdiction to make the appointment sought, and should allege all the necessary facts, such as * * * the right of the person who seeks administration, as next of kin, creditor, or otherwise, to be appointed.

"Details not necessary to jurisdiction, such as the exact value of the estate,

need not be averred, * * *." 33 C. J.S., Executors and Administrators, § 55, pp. 962, 963, but said text continues:

"As jurisdictional facts and their correctness may be determined at the hearing, a misnomer or inaccuracy in the petition, or even the omission of essential allegations, is often indulgently treated; * * *." Id., § 55, p. 963; State ex rel. Campbell v. Chapman, 145 Fla. 647, 1 So.2d 278; 23 C.J. p. 1060, note 86.

■ In view of our own holdings that a petition is not a necessary prerequisite to the validity of an appointment of an administrator, we hold that strictness of pleading in the petition is not required in this state. Breeding v. Breeding, 128 Ala. 412, 30 So. 881; Davis v. Swearingen, 56 Ala. 31; State ex rel. Campbell v. Chapman, supra; 23 C.J. 1060; 33 C.J.S., Executors and Administrators, § 55, supra.

■ We are not faced in the instant case with any question of disqualification of one who admittedly occupies a preferential position. The trial court has decreed that appellant is not a creditor and has made appointment under subdivision 4 of § 81. Both petitions were filed within 40 days after the death of decedent became known, so the time of filing application for letters is not a factor in the instant case.

Mrs. Burnett was no relation to Mrs. Speed. The theory of her case is that she rendered services to the deceased for a number of years before her death, for which she has a claim against the estate on the *quantum meruit*, for the reasonable value of such services by reason of an implied contract under our holding in Duncan v. Johnson, 239 Ala. 183, 194 So. 528. These services which were claimed to have been rendered fall into four several categories.

1. Services rendered before Mrs. Speed was judicially declared non compos, and at such times as now to be barred by the statute of limitations.

2. Services rendered before Mrs. Speed was declared non compos and at such times as not now to be barred by the statute of limitations.

3. Services rendered after Mrs. Speed was declared non compos and while Tom Reese was her lawful guardian.

4. Services rendered after Mrs. Speed was adjudicated non compos and while appellant was her lawful guardian.

While we feel it desirable to be mindful of these four different situations, under our view of the evidence we do not consider it necessary to discuss separately those parts of appellant's claim originating in each category.

Appellant has some $2,500 in her hands as former guardian of Mrs. Speed. There was evidence that Johns Ridout Funeral Parlors was a creditor of the estate in the sum of $1,282.25, but was not an applicant for letters of administration.

Appellant's evidence consisted of statements of several witnesses who testified that Mrs. Burnett was kind to Mrs. Speed and waited upon her, sewing, washing and cooking for her; bathed her and looked after her business at times, especially during spells of sickness; that Mrs. Burnett lived in the house with Mrs. Speed for a period of time, and also took Mrs. Speed to her own home on one or more occasions, the last being for seven weeks during Mrs. Speed's last illness. One witness testified that she heard Mrs. Speed say that Mrs. Burnett was there all the time she needed her, and she wanted her to be paid for it. Another testified that she heard Mrs. Speed say a week before she died that she wanted Mrs. Burnett to have everything she had. Another heard Mrs. Speed say that if she had anything at her death, she hoped Mrs. Burnett would get it. The times to which these statements referred were generally vague, indefinite and spasmodic, though several specific times mentioned were during the period after Mrs. Speed had been adjudicated non compos mentis, and others were so remote as probably to be barred by the statute of limitations. No testimony tended to recite the number of days, weeks or hours which Mrs. Burnett performed these services, nor the value of these services, nor their regularity. The evidence tended to show their nature as occasional.

Obviously, Mrs. Speed, by her own words, could make no express contract after she was adjudicated non compos mentis. Tit. 9, § 43, Code of 1940; Martin v. Simms, 233 Ala. 646, 172 So. 897; Lowery v. Pritchett, 204 Ala. 328, 85 So. 531.

Under the evidence adduced, which was heard ore tenus, the trial court refused to accord appellant a preferred position entitling her to letters of administration under subdiv. 3 of § 81. Bearing in mind that a claim withheld until after the death of the person to whom the service was rendered is viewed with suspicion, 34 C.J.S., Executors and Administrators, § 371, p. 106, and according to the finding of the trial court that presumption of correctness which is due it, we are impelled to the conclusion that the finding of the Probate Court in this regard was without error. Ala.Dig., Appeal and Error, ☞1008(1).

We now consider the question of the trial court's refusal to allow appellant to testify personally that she rendered certain services to deceased, and secondly, that she was never paid for these services. In the record and bill of exceptions, we find the following questions asked appellant, and appellee's objections thereto sustained by the trial court:

"Now, I will ask you prior to August 28, 1951, did you wait on Mrs. Speed?"

"Were you ever paid anything for any services rendered to Mrs. Speed for services you rendered to her prior to August 28, 1951?"

"Were you ever paid for any services rendered to Mrs. Speed between August 28, 1950 and January 2, 1953, the date of her death?"

"Witness was asked if she paid her own fare from Birmingham, Alabama, to Chattanooga and back in accompanying this body to Chattanooga, to which question the petitioner Garrison objected. The court sustained the objection to which ruling of the court the said Lena Burnett excepted."

§ 433, Tit. 7, Code of Alabama, 1940, provides:

"* * * no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, * * *."

The pertinent inquiry here is whether the testimony sought to be produced by these questions is comprehended within the terms of this Code section or is properly classed among the exceptions thereto. Decisions of this court in regard to various claims related in some degree to the present situation have been, in substance, as follows:

"The claim was based upon the quantum meruit and appellant was competent to testify what was a reasonable charge for her work in nursing and boarding the deceased." Hyde v. Starnes, 247 Ala. 26, 29, 22 So.2d 421, 423.

"Plaintiff testified to no transaction with or statement by deceased, but only to the collateral fact that services were rendered. This did not violate any provision of our statute." Hunt v. Murdock, 229 Ala. 277, 156 So. 841.

"In an automobile accident case, allowing the plaintiff to testify to conduct of defendant's deceased driver held reversible error, since conduct constituted 'transaction' with deceased person." Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63, headnote 3.

"* * * the evidence of plaintiff as to the number of professional visits made by him and what he did for the deceased was a transaction that would fasten a liability upon the estate of the decedent and comes within the exception." Duggar v. Pitts, 145 Ala. 358, 362, 363, 39 So. 905, 906.

"The plaintiff testified to no 'transaction with or statement by the decedent,'

but to the collateral fact that he rendered services, and the reasonable value of these services at the time and place. This was not a violation of the statute." Richards v. Williams, 231 Ala. 450, 453, 165 So. 820, 823.

" * * * defendant's evidence as to the number of cattle fed by him, and the length of time they were fed, does not fall within the common-law inhibition which has been perpetuated by the exception of section 4007 of the Code. A fortiori, defendant's testimony as to the value of the feeding and care of the cattle was admissible." Warten v. Black, 195 Ala. 93, 99, 70 So. 758, 761.

 It has been stated that—to come within the influence of the statute, the testimony must be of some act done by the decedent or in the doing of which he personally participated. Miller v. Cannon, 84 Ala. 59, 4 So. 204; Wood v. Brewer, 73 Ala. 259; Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63.

Also, in Warten v. Black, 195 Ala. 93, 70 So. 758, supra, the following statements of rules of guidance in determining the exclusion of proposed testimony are set forth as follows:

" ' Must be some act done by the deceased, or in the doing of which he personally participated' ";

"The rule of exclusion does not apply to evidence of facts and circumstances which, though affecting a transaction, constitute no part of it";

" 'It must appear that the interview or transaction sought to be excluded was a personal one' ";

" '* * * personal transaction or communication of the statute, no doubt, means a transaction or communication face to face, or by the parties in the actual presence and hearing of each other.' "

 It is to be noted that objections to the four questions quoted hereinabove were general and no offer was made to show what the answer of the witness would have been to each question. We are unable to say that her answers would have come within the rules governing admissibility of testimony in the instant case. This court in similar situations has held that where, on the trial of a cause, the court sustains objections to questions propounded to a witness by the appellant, and the grounds of the objection are not set out, and it does not appear from the bill of exceptions that the answers sought to be elicited would not have been immaterial or otherwise illegal, this court will not presume, in order to put the trial court in error, that the answers to these questions, if they had been made, would have been legal evidence and such rule, so presented, will not work a reversal of the case. Burgess v. American Mortg. Co. of Scotland, 115 Ala. 468, headnote 3, 22 So. 282; Flowers v. Graves, 220 Ala. 445, 125 So. 659; Morgan Hill Paving Co. v. Pratt City Sav. Bank, 220 Ala. 683, 127 So. 500.

Opinions supportive of the statement above are quoted:

"The ruling sustaining an objection to defendant's question on direct examination to her witness Mrs. White cannot be held for error. The question was: 'Did you ever, prior to the accident, hear Mrs. Feore make any statement as to whose car it was?' The objection was general, and on appeal the ruling must be sustained, if there was any good reason whatever why the testimony sought by the question should have been excluded. A self-disserving statement by defendant at a time when there was no reason to anticipate trouble would have been competent and relevant without regard to its connection with possession or other concrete act of ownership. Barfield v. Evans [187 Ala. 589, 65 So. 928], supra. If, however, defendant's statement as it would have been reported by the witness, was that she owned the car, defendant suffered no prejudice by its rejection. In these circumstances, to fasten error upon the trial court it seems that defendant should have stated to the court the nature of the answer she expected the witness to make. * * *" Feore

v. Trammel, 213 Ala. 293, 298, 104 So. 808, 812; Burgess v. American Mortg. Co. of Scotland, supra; Perry v. Danner, 74 Ala. 485, 487.

"We can not see that the court erred in excluding the evidence alleged to have been offered by the appellant in support of the averments of the complaint. The record fails to show what was the nature or character of this evidence. Nor is it even stated that it was either relevant or material to the issue in dispute, or that it was not mere hearsay. We are not authorized to assume any of these facts, in order to put the court below in the attitude of making an erroneous ruling. The judgment must be presumed to be free from error, unless the record affirmatively shows the contrary." Perry v. Danner, 74 Ala. 485, 487.

"No reversible error was committed in sustaining the plaintiff's objection to the question asked the witness Curley, by defendant's counsel, viz., 'And if it makes the engine work better that way, it is the engineer's duty to do it, to make it work best?' 'The general rule in reference to the admission or rejection of evidence is that the party taking the bill of exceptions must affirmatively show error to his prejudice, or the proceedings will not be disturbed.' Burgess v. American Mortgage Co., 115 Ala. 468, 473, 22 So. 282. It is not shown what would have been the answer of the witness had he been permitted to answer. Non constat, it might have been prejudicial to the defendant instead of beneficial. Allen v. State, 73 Ala. 23; Perry v. Danner, 74 Ala. 485." Alabama Steel & Wire Co. v. Thompson, 166 Ala. 460, 469, 52 So. 75, 78.

Not surprisingly, the rule probably is more clearly stated by Stone, J., in Allen v. State, 73 Ala. 23, 24, than elsewhere:

"There are two reasons why we feel compelled to affirm the judgment in this cause. We are not informed what would have been the answer of the witness to the questions which the court disallowed. For aught that we can note, the answer may have been immaterial, foreign to the issue, or otherwise illegal. It is not everything a party may say under the circumstances which he can have given in evidence in his favor * * *. To put the court in error, the record should inform us what answer the witness was expected to give. As the question arose on cross-examination, the interrogatory itself might have disclosed the answer expected. And when the question arises on direct examination, counsel can inform the court what he proposes to prove. The court can thus rule advisedly on a real question. Otherwise we cannot know the court excluded legal evidence. Stewart v. State, 63 Ala. 199; Burns v. State, 49 Ala. 370."

The foregoing quotations will support our holding that the trial court did not commit reversible error in sustaining appellee's objection to the four questions set out above. Appellant did not prove her right to a preferred position under the statute, nor did she offer any testimony which would have entitled her to such right.

We are not unmindful of the fact that § 445 of Tit. 7, Code of 1940, Acts 1927, p. 636, contains provisions which are conceivably contrary to the foregoing, but we have held many times since the passage of that Act as follows:

"It is necessary in order to review a trial court's ruling sustaining objection to a question which does not on its face show what is the expected answer, that attention be called to the proposed answer and show that such answer would be relevant evidence, notwithstanding section 445, Title 7, Code of 1940. Flowers v. Graves, 220 Ala. 445, 125 So. 659; Morgan Hill Paving Co. v. Pratt City Savings Bank, 220 Ala. 683, 127 So. 500; Berry v. Dannelly, 226 Ala. 151, 145 So. 663; Alaga Coach Line v. McCarroll, 227 Ala. 686, 151 So. 834, 92 A.L.R. 470; Southern Rail-

632

way Co. v. Montgomery, 229 Ala. 456, 157 So. 854." Strickling v. Whiteside, 242 Ala. 29, 31, 4 So.2d 416, 417.

See, also, Stallings v. State, 249 Ala. 580, 32 So.2d 236.

 There being no applicant for letters of administration within any of the classes entitled to a preference by the statute, it follows that the court could appoint any qualified person and there was no error in his appointment of appellee. For, it has been held that "when the probate judge appoints under subdivision 4 of the statute, he is clothed with 'large discretionary powers.'" McFry v. Casey, 211 Ala. 649, 650, 101 So. 449, 450; Phillips v. Peteet, 35 Ala. 696; Davis v. Swearingen, 56 Ala. 539.

The judgment of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.